UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Court No. 22-00185 |

## COMPLAINT

Plaintiffs Apiário Diamante Comercial Exportadora Ltda and and Apiário Diamante Produção e Comercial de Mel Ltda (collectively, "Supermel"), by and through their attorneys, allege and state:

## ADMINISTRATIVE DETERMINATION CONTESTED

1.     This action is an appeal from the final determination issued by the United States Department of Commerce ("Commerce") in the antidumping investigation on raw honey from Brazil.  Commerce published the contested final determination in the Federal Register on March 11, 2022.  *See Raw Honey From Brazil: Final Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 22,182 (April 14, 2022) ("Final Determination").  Supermel's final dumping margin was 83.72%

2.     Based on the Final Determination, Commerce issued the Antidumping Duty Order on Raw Honey from Brazil.  *See Raw Honey From Argentina, Brazil, India, and the*

*Socialist Republic of Vietnam: Antidumping Duty Orders*, 87 Fed. Reg. 35,501 (June 10, 2022) ("AD Order").

3.     Commerce's final determinations, findings, and conclusions are set out primarily in the issues and decision memorandum for the final determination.  *See Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Brazil* (April 7, 2022) ("Final Decision Memo").

## JURISDICTION

4.     Supermel brings this action pursuant to Section 516A(a)(2) of the Tariff Act of 1930, as amended (the "Act"), 19 U.S.C. § 1516a(a)(2).  Supermel contests the Department's Final Determination generally and specifically as applied to Supermel.  This Court has jurisdiction under 28 U.S.C. § 1581(c).

## STANDING

5.     Supermel is a Brazilian producer and exporter of processed honey that is the subject of the AD Order and, therefore, an interested party under Sections 516A(f)(3) and 771(9) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9) respectively.  Supermel was also a mandatory respondent in the underlying antidumping investigation from which this matter arises. Supermel thus has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.     Supermel filed a Summons with this Court on June 27, 2022, within 30 days from the date of publication of the AD Order.  Supermel's Complaint is timely filed pursuant to 19

U.S.C. § 1516a(a)(2)(A) and Rule 3 of the Rules of this Court, which requires that the Complaint be filed within 30 days of the Summons.

## STANDARD OF REVIEW

7.      The Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record as a whole, or is otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).

## STATEMENT OF FACTS

8.      Paragraphs 1 through 7 are realleged and incorporated herein.

9.      Supermel is a Brazilian producer and exporter of processed honey that is the subject of the AD Order.  On May 11, 2021, Commerce initiated the antidumping investigation on raw honey from Brazil.  *See Raw Honey From Argentina, Brazil, India, Ukraine, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 86 Fed. Reg. 26,897 (May 18, 2022) ("Initiation Notice").

10.      On June 7, 2021, Commerce selected Apiário Diamante Comercial Exportadora Ltda ("Apiario Export") and Melbras Importadora E Exportadora Agroindustrial Ltda. ("Melbras") as the mandatory respondents in the antidumping investigation.  *See* Memorandum Re Less-Than-Fair-Value Investigation of Raw Honey from Brazil: Respondent Selection (June 7, 2021).

11.      Apiário Diamante Comercial Exportadora Ltda (i.e., Apiario Export) and Apiário Diamante Produção e Comercial de Mel Ltda ("Apiario Production") are connected through

family ownership and operate under the trade name of Supermel.  *See* Memorandum Re Less-Than-Fair-Value Investigation of Raw Honey from Brazil: Preliminary Affiliation and Single Entity Memorandum for Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda (November 17, 2021).  As such, Commerce treated the two companies as a single entity and referred to as "Supermel" throughout the investigation.  *See id.*

12.     On June 10, 2021, Commerce issued a questionnaire to Supermel "to collect certain initial information to determine the extent of {Supermel's} direct involvement in the production of honey and its sourcing of honey from beekeepers that produced and supplied honey during the period of investigation (POI)."  *See* Initial Request for Information (June 10, 2021).  In response to the Initial Request for Information, Supermel stated that it "is a producer of subject merchandise" and sources honey from over 1,000 beekeepers in Brazil.  Supermel further explained that all of the beekeeper suppliers are unaffiliated.  Supermel described in detail the production process which includes 1-6 hours of heat treatment, homogenization (involving additional heat treatment), filtration, organic certification, and inspection.  *See* Supermel's Response to the Initial Request for Information (June 17, 2021).

13.     On July 22, 2021, Commerce requested all interested parties to submit comments on the raw honey cost of production ("COP") reporting methodology.  *See* Antidumping Duty Investigations of Raw Honey from India, Argentina, Brazil, and Ukraine: Request for Comments on the Raw Honey Cost of Production Reporting Methodology (July 22, 2021) ("Request for COP Comments").  The request was made in consideration of "the numerous non-affiliated middlemen and beekeepers involved in the cost of producing raw honey."  *Id.*  In the request, Commerce noted that it has relied on two different methodologies in prior agricultural

proceedings.  *See id.*  "… Commerce, in certain cases, has relied on the acquisition costs paid by the exporter/respondent, and, in other cases, selected non-affiliated cost respondents that supplied the exporter/respondent."  *Id.*  "For example, in *Individually Quick Frozen Red Raspberries from Chile*, *Certain Preserved Mushrooms from Indonesia*, *Canned Pineapple Fruit from Thailand, Orange Juice from Brazil, Shrimp from India and Shrimp from Thailand,* Commerce used the acquisition prices from non-affiliated suppliers for the agricultural product input because certain processing took place after the exporter received the input product from the non-affiliated supplier."  *Id.* (emphasis added).

14.     On July 29, 2021, the Brazilian respondents (i.e., Supermel and Melbras) together submitted their comments on the COP reporting methodology.  *See* Antidumping Duty Investigation of Raw Honey from Brazil: The Brazilian Respondents' Comments on the Raw Honey Cost of Production Reporting Methodology (July 29, 2021) ("Respondents COP Comments").  In that submission, the Brazilian respondents requested that Commerce use the acquisition costs because "producers of the merchandise under consideration (i.e., foreign like product or subject merchandise) in this investigation are the processors of honey, not beekeepers."  *Id.* at 3 (emphasis added).  The Brazilian respondents pointed out that the they conduct extensive processing after honey is purchased from beekeepers, which includes blending, heat treatment, homogenization, filtration, dehumidification, packaging, inspection and testing.  *See id.*  They also indicated that "the Brazilian Respondents would face extreme difficulties if the Department required the COP data from the unaffiliated beekeepers" because "{t}here are literally thousands of beekeepers who supply unprocessed honey to the Brazilian Respondents" and "{m}any of the beekeepers are small, family-run businesses that are not

required to maintain the COP information in their normal accounting books and records in accordance with the generally accepted accounting principles."  *Id.*

15.     The Argentinian respondents also requested Commerce to use the acquisition costs.  *See* Raw Honey from Argentina, Brazil, India, and Ukraine, Case Nos. A-357-823, A-351-857, A-533-903, and A-823-820: Asociación de Cooperativas Argentinas C.L. and NEXCO S.A.'s Response to Request for Comments on Cost of Production Reporting Methodology (July 29, 2021).  In their submission (which was also filed in the Brazilian AD investigation), Asociación de Cooperativas Argentinas C.L. ("ACA") and NEXCO S.A. ("NEXCO") stated that "the significant amount of processing and testing that they conduct before the honey is exported makes this case akin to *Individually Quick Frozen Red Raspberries from Chile*, *Certain Preserved Mushrooms from Indonesia*, *Canned Pineapple Fruit from Thailand*, and *Certain Frozen and Canned Warmwater Shrimp from Thailand"* in which Commerce used the acquisition costs because certain processing took place after the exporter received the input product from the non-affiliated supplier.  ACA and NEXCO also pointed out that *"{*w}hile Petitioners have suggested that those cases are distinguishable because the input product purchased by respondents was not subject merchandise, Petitioners are factually incorrect when they assert here that the input product purchased by ACA and NEXCO is subject merchandise that can be exported."  ACA and NEXCO emphasized that the unprocessed honey could not be exported as it is not compliant with the export market's local requirements and the processing even changes some of the major CONNUM characteristics such as color.  *See id.* at 4-5.

16.     On August 3, 2021, Supermel submitted its COP information based on the acquisition costs.  *See* Supermel's Section D response (August 3, 2021) ("Supermel DQR").  In

the Section D response, Supermel provided the company's entire honey purchase data for the Period of Investigation ("POI") covering April 1, 2020, through March 31, 2021.  *See* Supermel QRD, at Exhibit D-5a.  The honey purchase data included detailed information about each transaction such as the name of supplier, purchase date, quantity and value, and detail physical characteristics of the purchased honey.  *See id.*

17.     On August 10, 2021, Commerce issued questionnaires to solicit cost information from two beekeepers that supplied honey to Supermel (hereafter referred to as "Beekeeper 1" and "Beekeeper 2").  *See* Section D Questionnaires for Brazilian Beekeepers Cost of Production (August 10, 2021).  Beekeeper 1 and Beekeeper 2 respectively supplied 2.5% and 2% of the total honey purchased by Supermel.  *See* Supermel QRD, at Exhibit D-5a

18.     On September 9, 2021, the two beekeepers submitted their responses to Commerce's initial beekeeper questionnaires.  *See* Beekeeper 1 Response (September 9, 2021) and Beekeeper 2 Response (September 9, 2021).  Both of them indicated that they are small-scale rural beekeepers without any formal accounting system.  *See id.*  They indicated that their entire businesses are operated by family members (i.e., three people for Beekeeper 1 and two people for Beekeeper 2).  *See id.*  They also indicated that they do not prepare financial statements or maintain cost accounting or inventory records.  *See id.*  The beekeepers explained that their "labor is almost entirely dedicated to production activities and virtually no time is spent on administrative activities."  *Id.*  Due to the lack of accounting records, the beekeepers responded to the questionnaires based on their estimates of the ordinary expenses associated with honey production activities.  *See id.*

19.     In its initial response, Beekeeper 1 provided the total quantity and value of honey

it sold to Supermel during the POI.  The total quantity matched the total quantity reported by

Supermel for its purchase of honey from Beekeeper 1 during the POI.  The total value reported

by Beekeeper 1 was 3% less than the total value of honey purchased by Supermel.  *See id; see*

*also* Supermel QRD, at Exhibit D-5a.  Beekeeper 2 did not provide the total value or quantity of

honey sold to Supermel.  *See id.*

20.     On September 15, 2021, Supermel submitted its supplemental Sections A-D

questionnaire response.  In the response, Supermel indicated that the unprocessed honey is

recorded in "stock: raw materials account (41) in Supermel's books."  *See* Supermel's

supplemental A-D response (September 15, 2021) ("Supermel SDQR"), at 3.  Supermel then

provided a complete reconciliation of its honey purchase data to account 41 of its financial

statements.  *See* Supermel SDQR, at Exhibit SD-12.  Supermel also provided sample invoices

that were obtained by Supermel from the beekeepers at the time of actual honey purchases.  *See*

*id.* at Exhibit SD-13.  Those invoices were signed by the supplying beekeepers, demonstrating

that they were obtained at the time of delivery.  *See id.*

21.     On October 6, 2021, Supermel indicated to Commerce that it is a small company

and, as such, is experiencing difficulties in meeting the Commerce's requirements in the

investigation.  *See* Letter from Crowell & Moring LLP Re Supermel's Supplemental Sections A-

C response (October 6, 2021).  Supermel also requested assistance under 19 U.S.C. §

1677m(c)(1), which provides that Commerce "shall take into account any difficulties

experienced by interested parties, particularly small companies, in supplying information

requested by … {Commerce} and shall provide to such interested parties any assistance that is practicable in supplying such information." *See id.*

22.     On October 20, 2020, Commerce issued the second Supplemental Section D questionnaire to Supermel.  In that questionnaire, Commerce stated that, "{b}ased on the information provided by the beekeepers there is a discrepancy between the quantity and value of unprocessed honey you have reported as procured from the beekeepers."  Commerce then requested Supermel to confirm whether the total value and quantity of honey purchased from the beekeepers by Supermel during the POI are certain figures, which were neither the total quantity and value reported by Supermel nor the beekeepers.  Despite the ambiguity in the question, Supermel responded that those figures are incorrect and provided the correct figures based on its honey purchase data.  *See* Supermel's second supplemental Section D questionnaire response (November 4, 2021) ("Supermel 2SDQR"), at 14.  Supermel also provided the complete "journal entries" for all of its raw material purchases based on the reports generated by the system called SIGE (Sistema lntegrado de Gestao Empresarial), which is used by Supermel for the purposes of recording business activities.  *See* Supermel 2SDQR, at 5.  Additionally, Supermel submitted the sample screenshots of the SIGE reports.  *See id.*

23.     Commerce's October 20, 2020 questionnaire did not describe the nature or level of "discrepancy" between the quantity and value of honey reported by Supermel and the two beekeepers.  Commerce did not specifically refer to the 3% difference in the value of honey reported by Beekeeper 1.

24.     On October 26, 2021, the two beekeepers responded to Commerce's supplemental questionnaires.  In the responses, the beekeepers provided the tax invoices they registered with

the Brazilian government for the honey they sold to Supermel during the POI.  *See* Beekeeper 1

Supplemental Response (October 26, 2021), at Exhibit SUP-1; *see also* Beekeeper 2 Response

(October 26, 2021), at Exhibit SUP-1.  The "issue dates" on those tax invoices indicated that

they were prepared before the beekeepers signed the invoices provided to Supermel.  *See id; see*

*also* Supermel QRD, at Exhibit D-5a.  The tax invoices indicated: (1) the total quantities

reported by Beekeeper 1 and Beekeeper 2 match the total quantities reported by Supermel, (2)

the total value reported by Beekeeper 1 is 3% less than the total value of honey purchased by

Supermel, and (3) the total value reported by Beekeeper 2 is 6% less than the total value of

honey purchased by Supermel.  *See id.*  Beekeeper 1 supplied 2.5% of the honey purchased by

Supermel.  Therefore, the discrepancy in Beekeeper 1's reported value (i.e., 3%) represented

0.075% of the total value reported by Supermel.  Beekeeper 2 supplied 2% of the honey

purchased by Supermel.  Therefore, the discrepancy in Beekeeper 2's reported value (i.e., 6%)

represented 0.12% of the total value reported by Supermel.  Combined together the discrepancy

in value represented 0.2% of the total value of honey purchased by Supermel.

25.     On November 8, 2021, Supermel submitted its second supplemental Sections A-C

questionnaire response.  In that response, Supermel indicated that it operates under the Brazilian

tax regime for "micro and small businesses."  *See* Supermel's second supplemental Sections A-C

questionnaire response (November 8, 2021) ("Supermel 2SACQR"), at 18.  Supermel also

explained that it records business activities using SIGE and the actual accounting (i.e., entering

the total debit and credit amounts in the financial statements) is carried out by an external

accountant based on the reports generated by SIGE.  *See* Supermel 2SACQR, at 3-4.

26.     On November 23, 2021, Commerce issued its preliminary determination and

found a dumping margin of 29.61 percent for Supermel.  *See Raw Honey From Brazil:*

*Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final*

*Determination, and Extension of Provisional Measures,* 86 Fed. Reg. 66,533 (November 23,

2021) ("Initial PD").  The Initial PD contained a simple mathematical error that constituted a

significant ministerial error pursuant to 19 CFR 351.224(g)(1).  *See* Supermel's Ministerial Error

Comments (November 23, 2021).

27.     On December 17, 2021, Commerce amended the preliminary determination and

corrected Supermel's dumping margin to 10.52 percent.  *See* Raw Honey From Brazil: Amended

Preliminary Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 71,614 (December 17,

2021).

28.     In the preliminary determination, Commerce found that "the beekeepers are the

actual producers of the subject merchandise."  *See* Decision Memorandum for the Preliminary

Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Brazil (November

17, 2021) ("PDM"), at 17.  In support, Commerce stated that "the raw honey purchased by

Melbras and Supermel already falls within the scope of the investigation and reflects the

essential characteristics of the merchandise under consideration" and that "processing performed

by the exporter-respondents is minimal and does not result in significant changes to the subject

merchandise."  *See* PDM, at 16-17.

29.     In the preliminary determination, Commerce also decided to use the respondents'

acquisition costs as a "proxy" for the actual COP of the beekeepers because "both sampling and

the selection of the largest beekeepers were either unattainable or ineffective options" due to the

11

large number of beekeeper suppliers.  *See id.* at 17.  However, Commerce collected cost

information from the beekeepers to "assess the reasonableness" on relying on the acquisition

costs.  *See id.*

30.     For Supermel, Commerce found that it was "reasonable" to rely on Supermel's

acquisition costs because the record information demonstrated that "acquisition prices paid by

the respondent were higher than the actual COP incurred by its raw honey suppliers."  *See id.*

31.     For Melbras, Commerce found that the information provided by the suppliers was

"unusable" due to "their reported limited record keeping capabilities."  *See id.* at 18.  Commerce

then decided use Melbras' acquisition costs as facts available ("FA") because the suppliers

"acted to the best of their abilities."  *See id.*  However, Commerce stated that, all beekeepers are

now "on notice that they will be required to submit accurate cost information that is fully

supported by documentary evidence and is verifiable by Commerce officials" and "{f}ailure to

provide such information {in the future administrative reviews} could result in the application of

AFA."  *See id.*

32.     On December 20, 2021, Supermel submitted its response to Commerce's In Lieu

of Verification Questionnaire ("ILVQ").  In the response, Supermel provided the entire SIGE

report for its honey purchases during the POI as well as the sample invoices for the specific

transactions selected by Commerce.  *See* ILVQ, at 15.

33.      On April 14, 2022, Commerce issued the Final Determination and revised

Supermel's dumping margin to 83.72 percent based on the application of total adverse facts

available ("AFA").  *See Raw Honey From Brazil: Final Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 22,182 (April 14, 2022) ("Final Determination").

34.  In the Final Decision Memo, Commerce provided two primary reasons for the application of total AFA: (1) there are discrepancies between Supermel's honey purchase data and the unaffiliated beekeeper suppliers' tax invoices, and (2) Supermel did not provide the "journal entries" for honey purchases as requested by Commerce.  *See* Final Decision Memo, at 13 and 15.

## COUNT I

35.  Paragraphs 1 through 34 are realleged and incorporated herein.

36.  Commerce's finding that Supermel failed to act to the best of its ability by not providing the requested documentation regarding its honey purchases is unlawful and unsupported by substantial evidence.

37.  In the underlying investigation, Supermel was the mandatory respondent, not the selected beekeepers.  Commerce found at the Preliminary Determination that it was reasonable to use Supermel's acquisition costs.  Therefore, Commerce's request for additional information should have been aimed at filling any gap in the information provided by Supermel, not resolving "discrepancies" with documents provided by the beekeepers.  In this case, Commerce's request for information was aimed at "verifying" Supermel's data against the documents provided by the beekeepers and the same standard was applied to determine whether Supermel failed to provide the requested information.  This was unlawful.

38.  The record evidence demonstrates that Supermel acted to the best of its ability by providing the requested documentation.  Commerce requested "all relevant supporting

documentation" that corroborates the quantity and value of honey Supermel purchased from

beekeepers.  Supermel responded to this request by providing the actual journal entries

maintained in the company' recordkeeping system for purchases of honey, the complete

reconciliation between the journal entries and the company's financial statements, and the

sample invoices signed by beekeepers demonstrating the delivery and payment for purchased

honey.

 39. Commerce's allegation that Supermel failed to provide the requested

documentation because its journal entries are not "accounting" journal entries is unreasonable.

Supermel explained that the journal entries are the actual records maintained by the company

and provided the complete reconciliation between the journal entries and account 41 of the

company's financial statements.  Supermel also indicated that the actual accounting for the

financial statements is carried out by an external accountant.  There is no legal requirement that a

company's journal entries as maintained in its ordinary course of business must show debit and

credit entries.  Commerce was unlawful in applying total AFA when the journal entries provided

by Supermel reconciled and verified its honey purchases and satisfied the requirements for

Commerce's request for corroborating information.

 40. When Commerce made the request for corroborating information, Commerce

indicated that "there is a discrepancy between the quantity and value of unprocessed honey …

{Supermel has} reported as procured from the beekeepers."  However, at the time, there was no

discrepancy in quantity.  The quantity reported by Beekeeper 1 matched that of Supermel.

Beekeeper 2 has not yet reported its quantity.  Moreover, Commerce cited incorrect quantity and

value figures.  Therefore, Commerce's question was indicative of an error in reviewing the

record information.  Considering this apparent error in the question (and the ambiguity caused by

the error), Supermel's response was both reasonable and complete; and Commerce's allegation that Supermel failed to act to the best of its ability to respond to the information request is unsupported by substantial evidence.

## COUNT II

41.  Paragraphs 1 through 40 are realleged and incorporated herein.

42.  Commerce's application of total AFA based on the alleged "discrepancies" between Supermel's honey purchase data and the unaffiliated beekeepers' tax invoices are unlawful and unsupported by substantial evidence.

43.  In the underlying investigation, Supermel was the mandatory respondent, not the selected beekeepers.  However, Commerce unlawfully used the documents collected from the independent beekeepers to "verify" Supermel's data.  There is no legal authority for Commerce to verify a respondent's data against another party's information.  Moreover, Commerce improperly determined that the beekeepers' tax invoices are more accurate than Supermel's invoices despite the fact Supermel's invoices were signed by beekeepers, reconciled and verified to Supermel's financial statements.  In fact, Commerce did not even request the beekeepers to provide any corroborating evidence for the tax invoices they provided.  Commerce does not have the legal authority to apply AFA to a respondent based on the information submitted by a third party that is not related or affiliated to the respondent.  Therefore, the alleged discrepancies by themselves were not a lawful basis for applying AFA to Supermel.

44.  Commerce unlawfully used the information collected from the selected beekeepers to test the accuracy of the data submitted by Supermel.  In the Preliminary Determination, Commerce explained that it collected information from the beekeepers to "assess the reasonableness" on relying on Supermel's acquisition costs by examining whether

Supermel's acquisition costs are higher than the beekeepers' costs. This reasonability test has been met. The alleged discrepancies were present at the time of the Preliminary Determination and did not impact the outcome of the reasonability test.

45.     If *arguendo* Commerce could apply AFA based on the alleged discrepancies, the discrepancies could be explained by information on the record. The record evidence demonstrates that the alleged discrepancies are due to different recordkeeping practices between Supermel and the selected beekeepers. Supermel used the invoices signed by beekeepers at the time of delivery and recorded the actual expenses incurred for the transactions. The beekeepers do not maintain a separate record of the value of honey sold to Supermel and therefore provided the tax invoiced prepared before the actual transactions. The value of honey reported by Supermel includes all ancillary expenses such as transportation while the value of honey reported by the beekeepers does not.

46.     If *arguendo* the alleged discrepancies could not be explained, the discrepancies still do not warrant application of total AFA because they only demonstrate that Supermel *overreported* its raw material costs. Moreover, the alleged discrepancies represent only 0.2% of the total value of honey purchased by Supermel. Commerce could easily address the issue by making a reasonable adjustment to Supermel's reported costs. Therefore, the application of total AFA was grossly inappropriate considering the nature and magnitude of the issue and was contrary to Commerce's statutory obligation to calculate an accurate dumping.

**COUNT III**

47.     Paragraphs 1 through 46 are realleged and incorporated herein.

48.     Commerce's determination that beekeepers are the producers of subject honey exported from Brazil was unlawful and unsupported by substantial evidence.  Supermel, a processor, was selected as the mandatory respondent, not their unaffiliated beekeepers.

49.     Commerce's finding that "the processing performed by the exporter-respondents is minimal and does not result in significant changes to the subject merchandise" is unsupported by substantial evidence.  The record demonstrates that Supermel performs extensive processing after honey is purchased from beekeepers.  The record also demonstrates that the processing results in significant changes to the product characteristics of subject merchandise such as color, filtration level, and organic certification.  Unprocessed honey, as supplied by beekeepers, cannot be exported to the U.S. market.  In prior cases involving agricultural goods, Commerce determined that processors are the producers of subject merchandise because certain processing took place after the processors received the input products.

50.     Commerce conducted an entire investigation of Supermel, a processor, only to determine in its Preliminary Determination that the beekeepers, not the processors, were the producers.  This belated determination is unlawful and arbitrary and capricious.

51.     Section 773(b)(3)(A) of the Tariff Act, as amended, provides that the cost of production shall include "the cost of materials and fabrication or other processing of any kind employed in producing the foreign like product."  19 U.S.C. § 1677b(b)(3)(A).  The record evidence demonstrates that processors are the producers of the subject merchandise and the foreign like product and their acquisition costs are the appropriate raw material costs.

52.     In the underlying investigation, Commerce unlawfully determined that beekeepers are the producers of the subject merchandise.  Commerce then unlawfully applied total AFA to Supermel based on the information collected from the selected beekeepers.  Since Commerce's

finding about the producer was unlawful, Commerce's request for additional information and application of total AFA to Supermel was also unlawful.

53.     Beekeepers are not the producers of the subject merchandise.  Therefore, Commerce was unlawful in stating that all beekeepers are now "on notice that they will be required to submit accurate cost information that is fully supported by documentary evidence and is verifiable by Commerce officials" and "{f}ailure to provide such information {in the future administrative reviews} could result in the application of AFA."  Moreover, Commerce does not have the legal authority to apply AFA based on a beekeeper's failure to provide information unless that beekeeper is a respondent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in favor of Plaintiffs, declare that Commerce erred in the final results in the subject administrative review as alleged herein, and remand to the Department with instructions to publish new final results in conformity with the opinion of this Court.  Specifically, the Plaintiffs pray that this Court remand Commerce to:

1. Decide that Supermel did not fail to act to the best of its ability in providing the documentation requested by Commerce;

2. Decide that the alleged discrepancies Supermel's reported unprocessed honey purchases and the unaffiliated beekeeper suppliers' tax invoices do not warrant an application of total AFA;

3. Decide that processors are the producers of the subject merchandise; and

4. Revise the margin calculation using Supermel's reported honey purchase costs.

Plaintiffs otherwise request that the Court grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Daniel Cannistra*
Daniel Cannistra, Esq.
Pierce Lee, Esq.

Crowell & Moring
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Counsel for Plaintiffs

Dated: July 27, 2022

## CERTIFICATE OF SERVICE

Pursuant to Rule 3(f) of the Court of International Trade, I, Daniel Cannistra, hereby certify that I have caused copies of the Complaint, in Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda v. United States, Case No. 22-00185, be served upon the parties in the administrative proceeding, by the U.S. certified mail, return receipt requested on July 27, 2022.

**UPON THE UNITED STATES:**

Kara Marie Westercamp
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 305-7571
Fax: (202) 514-8624
Email: kara.m.westercamp@usdoj.gov

**UPON THE DEPARTMENT OF COMMERCE:**

Robert Heilferty, Esq.
Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
14th Street and Constitution Ave., NW
Washington, DC 20230

**Other Interested Parties**

Maliha Khan, Esq.
Representative of American Honey Producers Association, and Sioux Honey Association
Kelley Drye & Warren LLP
3050 K Street, NW
Washington, DC 20007-5108
Phone: 202-342-8400
Email: mkhan@kelleydrye.com

Gregory J. Spak, Esq.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807
Email: gspak@whitecase.com

John J. Kenkel, Esq.
deKieffer & Horgan
1090 Vermont Avenue, NW
Suite 410
Washington, DC 20005
Email: jkenkel@dhlaw.com

Marco D Davis, Esq.
Davis & Leiman P.C.
1025 Connecticut Ave., NW
Suite 1012
Washington, DC 20036
Email: mdavis@dltrade.com

Jeffrey S. Neeley
Husch Blackwell LLP
750 17th Street, NW
Suite 900
Washington, DC 20006
Email: jeffrey.neeley@huschblackwell.com

Aluisio Gomien de Lima Campos
Government of Brazil
Embassy of Brazil
3006 Massachusetts Ave., NW
Washington, DC 20008
Email: aluisio.campos@itamaraty.gov.br


/s/ *Daniel Cannistra*
Daniel Cannistra