## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda, | |
| Plaintiffs, | |
| v. | |
| United States, | Court No. 22-00185 |
| Defendant, | **PUBLIC DOCUMENT** |
| and | |
| American Honey Producers Association and the Sioux Honey Association, | |
| Defendant-Intervenors. | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF RULE 56. 2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Daniel J. Cannistra
Pierce J. Lee

Crowell & Moring LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Tel: (202) 508-8780
Email: plee@crowell.com

*Counsel for Plaintiffs*

Dated:       April 4, 2023

# TABLE OF CONTENTS

**Page No.**

SUMMARY OF ARGUMENTS ...................................................................1

ARGUMENT ...........................................................................................5

I.  Supermel did not fail to provide any information ..............................5

    A. The SIGE reports are Supermel's normal books and records ...................5

    B. There is no accounting journal reflecting credit and balance for the "stock" account ....................................................................................9

    C. Commerce did not apply AFA to Supermel for the lack of inventory records ....................................................................................13

    D. There was no deficiency in Supermel's responses ................................14

II. Supermel did not fail to cooperate to the best of its ability .............................17

    A. Commerce could not reasonably expect Supermel to maintain an accounting journal for inventory of raw materials .............................17

    B. The "subjective showing" standard requires consideration of Supermel's small entity status and accounting process ......................18

    C. Commerce failed to describe any deficiency in Supermel's responses .......................................................................................20

III. Supermel is a producer of the subject merchandise ......................................24

    A. Commerce's finding that Supermel performed "minimal" processing is unsupported by substantial evidence.............................24

    B. Supermel did not waive any argument about its producer status with respect to the alleged discrepancies between Supermel honey purchase data and the unaffiliated beekeepers' sales invoices..........................................................................................26

    C. Commerce cannot apply AFA to a respondent for the failure of an unaffiliated supplier..........................................................................28

CONCLUSION .............................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Nippon Steel Corp. v. U.S.*,
   337 F.3d (Fed. Cir. 2003) ....................................................................16, 17, 18

*Siemens Energy, Inc. v. United States*,
   806 F.3d 1367 (Fed. Cir. 2015) ........................................................................19

*Tianjin Magnesium Intern. Co., Ltd. v. United States*,
   Court No. 09-00535, Slip Op. 11-17, at 7 (Ct. Int'l Trade, Feb. 11,
   2011). ................................................................................................................28

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951)...........................................................................................19

**Statutes**

19 U.S.C. § 1677b(b)(3)(A) .....................................................................................24

19 U.S.C. § 1677b(b)(l) ............................................................................................23

19 U.S.C. § 1677e(a) ..................................................................................................1

19 U.S.C. § 1677m(c)(1) ...........................................................................................20

19 U.S.C. § 1677m(d) ...............................................................................................22

**Other Authorities**

19 C.F.R. § 351.307(d) .............................................................................................16

Plaintiffs Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda (Collectively, "Supermel") hereby submit this reply brief in support of Rule 56.2 motion for judgement on the agency record contesting the Department of Commerce's ("Commerce's" or the "Department's") decision to apply adverse facts available ("AFA") to Supermel in the antidumping duty investigation on raw honey from Brazil.

## SUMMARY OF ARGUMENTS

In the underlying investigation, Commerce unlawfully applied AFA to Supermel without meeting statutory requirements.  To apply facts available, Commerce must demonstrate that Supermel failed to provide information requested by Commerce.  *See* 19 U.S.C. § 1677e(a).  To apply adverse inference, Commerce must demonstrate that Supermel failed to cooperate to the best of its ability.  *See id.* § 1677e(b).  Commerce failed to meet these requirements.

First, Supermel did not fail to provide any information requested by Commerce.  Commerce requested Supermel to "tie" its honey purchase data to its accounting records.  In response, Supermel submitted journal entries from its recordkeeping system called SIGE.  The SIGE reports matched the total amount of honey purchases reported in Supermel's financial statements.  In the Final Determination, Commerce rejected the SIGE reports for not being an "accounting"

1

Public Document

journal reflecting inventory of purchased honey.  The record demonstrates that such "accounting" journal does not exist.

The record demonstrates that Supermel does not maintain an accounting journal for its inventory of purchased honey.  Supermel does not have "an inventory control system integrated with accounting."  Pursuant to the Brazilian tax law, Supermel reports "calculated" numbers for its inventory of purchased honey.  These numbers are calculated by an external accountant based on Supermel's sales revenues, not an accounting journal.  Commerce agreed that Supermel was not required to maintain inventory records.  Therefore, Commerce's finding that Supermel failed to provide its accounting journal for inventory of purchased honey is unsupported by substantial evidence.

Second, Supermel did not fail to cooperate to the best of its ability.  In the Final Determination, Commerce found that Supermel failed to cooperate by not providing an accounting journal for inventory of purchased honey.  However, to make this finding, Commerce must *objectively* show that it is reasonable to expect Supermel to maintain such an accounting journal.  Under the Brazilian tax law, Supermel was not required to maintain inventory records.  Therefore, it was not reasonable to expect Supermel to maintain an accounting journal for inventory of purchased honey.

Commerce also failed to make a *subjective* showing that Supermel failed to act to the best of ability. The subjective showing standard requires Commerce to consider all factors that are specifically applicable to Supermel, such as its small entity status and accounting process. In the Final Determination, Commerce failed to consider these subjective factors. Defendant claims that Supermel failed to exhaust this argument. However, the "subject showing" requirement is a legal standard, not an argument that can be waived.

Commerce also failed to describe any deficiency in Supermel's responses. In the Final Determination, Commerce found for the first time that there are discrepancies between Supermel's honey purchase data and the unaffiliated beekeepers' sales invoices. Commerce claimed that it "alerted Supermel to the discrepancies" by issuing a second supplemental questionnaire. However, that questionnaire was issued before the beekeepers submitted their sales invoices. Therefore, Commerce could not possibly notify Supermel of the alleged discrepancies.

Finally, Supermel did not waive any argument about its producer status with respect to the alleged discrepancies between Supermel's honey purchase data and the unaffiliated beekeepers' sales invoices. Commerce described the discrepancies for the first time in the Final Determination. Accordingly, Supermel could not

Public Document

exhaust any argument about the discrepancies in its administrative case brief.  In its opening brief, Supermel argued that the alleged discrepancies were not a lawful basis for applying AFA because Supermel's producer status makes the discrepancies irrelevant.  Supermel could not make this argument until Commerce applied AFA.  Therefore, Supermel did not waive the argument about its producer status to the extent that it is relevant to the alleged discrepancies.

## **ARGUMENT**

### **I. Supermel did not fail to provide any information**

#### **A. The SIGE reports are Supermel's normal books and records**

During the investigation, Supermel provided its entire honey purchase data for the period of review ("POI").  *See* Supermel's Section D Response ("DQR") (CR 100-140; PR 133-152), at Ex. D-5a.  The honey purchase data included detailed information about each transaction such as the name of supplier, purchase date, quantity and value, and detailed physical characteristics of the purchased honey.  *Id.*  This information was directly from Supermel's recordkeeping system called SIGE.  *See* Supermel's Second Supp. Section D Response ("2SDQR") (CR 286-294; PR 259), at 5.  Pursuant to Commerce's request for supporting information, Supermel submitted its SIGE reports for purchases of all raw materials including unprocessed honey.  *Id.* at Ex. 2SD-11a through 2SD-11d; s*ee also* Supermel's In-Lieu-of-Verification Questionnaire Response ("ILVQ") (CR 459-493; PR 325-331), at Ex. VC-4.1 through 5.2.  However, Commerce rejected the SIGE reports for not being "accounting" journals.  *See* Final Issues and Decision Memorandum ("Final IDM") (PR 354), at 15.  This decision was unsupported by substantial evidence.

The record demonstrates that the SIGE reports are the requested journals in Supermel's normal books and records. "Supermel does not have a formal accounting system." *See* DQR, at 10. Accordingly, Supermel utilizes an accounting process similar to that of an individual relying on a third-party accountant to prepare personal tax returns. Supermel records its business activities such as sales and purchases using its recordkeeping system (i.e., SIGE). *See* Supermel's Second Supp. Sections A-C Response ("2SACQR"), at 3-4. Supermel then provides the SIGE reports to an external accountant to prepare financial statements. *Id.* Therefore, Supermel's normal books and records consist of the SIGE reports and the financial statements prepared by the external account.

In this case, the ultimate issue is whether Supermel failed to provide supporting information for its honey purchases. Supermel submitted: (1) financial statements showing the total amount of honey purchases reported as <u>debit</u> in the "stock" account[1]; (2) the SIGE reports containing every transaction included in the total debit amount[2]; (3) reconciliation between the SIGE reports and the financial statements[3]; and (4) supporting invoices/receipts for the SIGE reports.[4] These

---

[1] *See* Supermel's Supp. Section D Response ("SDQR") (CR 181-201; PR 205), at Ex. 2SA-5 & 2SA-9.
[2] *See* 2SDQR, at Ex. 2SD-11a through 2SD-11d; *see also* ILVQ, at Ex. VC-4.1 through 5.2.
[3] *See* SDQR, at Ex. SD-12; *see also* 2SDQR, at Ex. 2SD-10.
[4] *See* SDQR, at Ex. SD-13 & SD-16.

documents were exactly what Commerce requested – i.e., documentation to "tie" Supermel's honey purchase data to its accounting records.

In the Final Determination, Commerce claimed that Supermel failed to provide its "accounting" journals for honey purchases because the SIGE reports do not reference the name or number of the "stock" account reported in Supermel's financial statements – i.e., Account 41 "Stock: Raw Materials."  *See* Final IDM, at 15.  However, this finding demonstrates Commerce's failure to understand Supermel's accounting process.  The SIGE reports are sent to an external accountant so that the accountant can determine the total debit amount for the "stock" account.  *See* 2SACQR, at 3-4; *see* SDQR, at. 3, 13-14; *see also* ILVQ, at 11-12.  As reconciled by Supermel, the total debit amount for the "stock" account reflected the sum of the raw material purchases recorded in the following SIGE reports:

|  |  |
|---|---|
| RELATORIO DE COMPRAS DE MEL | Honey Purchase Report |
| RELATORIS PROPOLIS | Propolis Report |
| RELATORIOS POLEN | Pollen Reports |
| RELATORIO CERA | Beeswax Reports |

*See* 2SDQR, at Ex. 2SD-11a through 2SD-11d; *see also* ILVQ, at Ex. VC-4.1 through 5.2.  The names of these SIGE reports clearly indicate the relevant raw materials.  The reconciliation demonstrates that the SIGE reports are the supporting journals for the total amount of honey purchases reported as <u>debit</u> for

the "stock" account in its financial statements.  *See* SDQR, at Ex. SD-12; *see also* 2SDQR, at Ex. 2SD-10.   Therefore, it was unreasonable for Commerce to reject these reports for not referencing the "stock" account.

The unreasonableness of Commerce's decision regarding the SIGE reports can further be illustrated using an analogy.  For instance, if an individual collects receipts for business expenses and provides a list of the expenses to an accountant for tax filing, what would be the supporting journal for the total expense reported in the tax return?  Would it matter if the list of expenses did not reference the relevant box code in the tax return?  The answers are as obvious as the answers for the questions raised in this case.

In this case, Commerce requested Supermel to provide its journal entries for purchases of unprocessed honey.  Supermel provided the requested information by submitting its SIGE reports for honey.  Supermel reconciled the SIGE reports to its financial statements and submitted supporting documentation.  Therefore, Supermel did not fail to provide any information requested by Commerce.

## B. There is no accounting journal reflecting credit and balance for the "stock" account

As explained above, Supermel "tied" its honey purchase data to its accounting records by providing the SIGE reports for purchases of unprocessed honey as well as all other raw materials. The total amount of those purchases matched the total <u>debit</u> amount reported for the "stock" accounts in Supermel's financial statements. However, Commerce rejected the SIGE reports for not reflecting <u>credit</u> and <u>balance</u> for the "stock" account. *See* Final IDM, at 15. The record demonstrates credit and balance for the "stock" account were "calculated" by an external accountant based on Supermel's sales revenues. *See* ILVQ, at 12-13. Therefore, there cannot be any accounting journal reflecting credit and balance for the "stock" account.

As explained above, debit for the "stock" account represents purchases of raw materials. Likewise, credit for the "stock" account represents consumption of the raw materials. Accordingly, balance for the "stock" account represents inventory of the raw materials. If there *were* an accounting journal for this account, credit and balance *would* represent the actual values of raw material consumption and inventory. However, "Supermel does not have an inventory control system integrated with accounting." *See* DQR, at 7. As such, pursuant to the Brazilian tax law, Supermel reports calculated numbers for the values of raw

Public Document

material consumption and inventory. *See* ILVQ, at 13. The amounts reported as credit and balance for the "stock" account are calculated by an external accountant retained by Supermel. *Id.* Therefore, there is no accounting journal reflecting credit and balance for the "stock" account.

The following table summarizes the nature of the "stock" account in Supermel's financial statements:

**Apiário Diamante Comercial Exportadora Ltda**
**2020 Financial Statements**
**Account 41 Raw Material Stock[5]**

| *2019 Balance* | *Debit* | *Credit* | *2020 Balance* |
|---|---|---|---|
| A | B | C | D = A + B – C |
| • Record from previous year | • Raw material purchases<br>• Actual purchase value based on journal entries (SIGE reports)<br>• Reconcilable<br>• Verifiable | • Raw material consumption<br>• Calculated by an external accountant as a percentage of the 2020 revenue<br>• No journal entries | • Raw material inventory<br>• Calculated by an external accountant based on debit and credit<br>• No journal entries |

---

[5] *See* SDQR at Ex. 2SA-5.

Public Document

Supermel explained its accounting process in its response to every questionnaire issued by Commerce, as follows:

- In the initial Section D response, Supermel explained that it does not have "a formal accounting system" or "an inventory control system integrated with accounting." *See* DQR, at 7 & 10.  Supermel further explained that its "financial statements record raw material and inventory values based on certain percentages of the finished goods revenues." *Id.* at 20.

- In the first supplemental Section D response, Supermel explained that its financial statements do not reflect "the actual value of raw material consumed" because "Supermel records inventory values based on certain cost assumptions permitted under the Brazilian law." *See* SDQR, at 2, 6, 13, 15.  Supermel then explained that Commerce should use Supermel's honey purchases because the purchases (unlike consumption and inventory) are reported in the financial statements as debit for the "stock" account.  *Id.* at 3.  Supermel also explained that, unlike processing costs which are recorded in the appropriate expense accounts, "the company's raw material costs are recorded in the honey purchase data." *Id.* at 17.

- In the second supplemental Section D response, Supermel explained that its "raw material consumption and inventory values are determined based on the sales revenue, not on the actual inventory quantities." *See* 2SDQR, at 9-10. Supermel further explained that the revenue is first used to calculate the value of raw materials consumed, which is then used to calculate the value of inventory reported in the financial statements. *Id.*

- In the in-lieu-of-verification response, Supermel explained that **an external accountant determines the raw material consumption and inventory values reported for the "stock" account based on the sales revenues**. *See* ILVQ, at 12-13. Supermel explained that the accountant calculates the value of raw material consumption so that the cost of goods sold ("COGS") is 80% of the sales revenue. *Id.* Supermel also explained that the accountant calculates the value of year-end inventory by adding purchases (i.e., debit) and subtracting the calculated consumption value (i.e., credit) from the value of inventory for the previous year. *Id.*

As shown above, the record clearly demonstrates that there cannot be any accounting journal reflecting credit and balance for the "stock" account.

Therefore, Commerce unlawfully determined that Supermel failed to provide a non-existent accounting journal.

### C. Commerce did not apply AFA to Supermel for the lack of inventory records

In the Final Determination, Commerce applied AFA to Supermel for failing to provide an accounting journal reflecting credit and balance for the "stock" account. *See* Final IDM, at 15. As explained above, the "stock" account represents inventory of raw materials. *See* ILVQ, at 12-13. However, Commerce decided not to apply AFA to Supermel for the lack of inventory records. *See* Final IDM, at 17-18. Therefore, Commerce made contradictory decisions. On one hand, Commerce determined that Supermel was not required to maintain inventory records. On the other hand, Commerce determined that Supermel failed to provide an accounting journal for the inventory records.

Supermel relied on its honey purchase data to determine the value of raw materials included in the reported cost of production ("COP"). *See* DQR, at 10. Ordinarily, the COP is reported based on the value of raw materials *consumed* during the production process. However, Supermel could not determine the value of such consumption because it did not have an inventory control system integrated with accounting. *See* SDQR, 2-3. Supermel's financial statements indicated the value of consumption as credit for the "stock" account, but that amount was not

based on the actual amount of honey consumed during the production process. *See* ILVQ, at 12-13. Therefore, due to the lack of inventory records, Supermel proposed to rely on information about its purchases of unprocessed honey instead of consumption. *See* SDQR, 2-3.

Commerce did not dispute the methodology used by Supermel to determine the value of raw materials included in the reported COP. *See* Final IDM, 12-17. Commerce acknowledged the limitation in Supermel's records and agreed that "the company was not required to maintain such {inventory} records under Brazilian tax law." *Id. at 18.* Commerce understood that, due to the lack of inventory records, Supermel determined the reported raw materials costs "based on purchase prices" instead of consumption values. *Id.* at 16. Therefore, Commerce understood that Supermel does not maintain any accounting journal for inventory of purchased honey.

### D. There was no deficiency in Supermel's responses

In the underlying investigation, there was no deficiency in Supermel's responses. From the outset, Supermel explained that it does not maintain inventory records of raw materials and proposed to rely on purchases instead of consumption. *See* DQR, at 20. Supermel submitted complete honey purchase data[6], reconciled

---

[6] *See* DQR, at Ex. D-5a.

Public Document

the data to its financial statements[7], and provided supporting documents[8]. Those documents verified the accuracy of the honey purchase data.

Defendant claims that there was a deficiency in Supermel's responses because there was no "record evidence supporting Supermel's reported purchases of raw honey as recorded in its normal books and records." *See* Def. Br. at 21. However, as explained, there was no such informational gap because Supermel submitted its journal entries for honey purchases recorded in its normal books and records (i.e., SIGE) and supporting invoices/receipts.

In the Final Determination, Commerce found for the first time that there were discrepancies between Supermel's honey purchase data and the unaffiliated beekeepers' sales invoices. *See* Final IDM, at 13.  Defendant implies that these discrepancies were a deficiency in Supermel's responses. *See* Def. Br. at 19 ("Commerce sent Supermel a second supplemental Section D questionnaire to clear up discrepancies and fill in gaps on the record.").  Defendant Intervenor also implies that the alleged discrepancies were a deficiency in Supermel's responses. *See* Def. Int. Br. at 22 ("None of Supermel's reported honey purchase data

---

[7] *See* S*DQR, at Ex. SD-12; *see also* 2SDQR, at Ex. 2SD-10.
[8] *See* 2SDQR, at Ex. 2SD-11a through 2SD-11d; *see also* ILVQ, at Ex. VC-4.1 through 5.2; *see* SDQR, at Ex. SD-13 & SD-16.

Public Document

reconciles with the data submitted by Supermel's beekeeper suppliers."). However, the alleged discrepancies were not a deficiency in Supermel's responses.

As a mandatory respondent, Supermel was only required to verify its own information, not the information provided by the unaffiliated beekeepers. Commerce verifies the "accuracy and completeness of <u>submitted</u> factual information." 19 C.F.R. § 351.307(d) (emphasis added). Therefore, Supermel was never required to explain the alleged discrepancies between its honey purchase data and the unaffiliated beekeepers' sales invoices. Even Defendant concedes that Supermel was not required to explain the discrepancies. Defendant states that "Commerce's requests may have been triggered by the information submitted but the data that Commerce attempted to verify was Supermel's data, in the form of its own purchases of unprocessed honey." *See* Def. Br. at 22-23. As explained above, Supermel verified its honey purchases with journal entries from its normal books and records and supporting documentation. Therefore, there was no deficiency in Supermel's responses.

## II. Supermel did not fail to cooperate to the best of its ability

### A. Commerce could not reasonably expect Supermel to maintain an accounting journal for inventory of raw materials

In the Final Determination, Commerce found that Supermel failed to act to the best of its ability by not providing an accounting journal reflecting debit, credit, and balance for the "stock" account. *See* Final IDM, at 15-16. However, to apply adverse inference, Commerce must make an objective showing that it is reasonable to expect Supermel to maintain the accounting journal. *See Nippon Steel Corp. v. U.S.*, 337 F.3d at 1373, 1382 (Fed. Cir. 2003). Commerce failed to make this objective showing.

As explained, the "stock" account in Supermel's financial statements represents inventory of raw materials. *See* ILVQ, at 12-13. Under the Brazilian tax law, companies "whose inventory controls are not integrated with accounting" are not required to report the actual values of raw material inventories. *Id.* Instead, such companies can calculate their inventory values based on certain cost assumptions permitted under the law. *Id.* Since Supermel does not have an inventory control system integrated with accounting, it reports calculated numbers for inventory of raw materials in the "stock" account. *Id.* Those numbers are calculated by an external accountant retained by Supermel. *Id.* Commerce agreed that Supermel "was not required to maintain such {inventory} records under

17

Brazilian tax law.  *See* Final IDM, at 18.  Therefore, Commerce could not

reasonably expect Supermel to maintain an accounting journal for inventory

records.

### B. The "subjective showing" standard requires consideration of Supermel's small entity status and accounting process

Defendant claims that Supermel failed to exhaust its argument that

Commerce failed to consider Supermel's status as a small business in determining

whether Supermel failed to act to the best of its ability.  *See* Def. Br. at 27-18.

However, Defendant's claim lacks merit because the legal standard for applying

adverse inference includes a *subjective* showing that the respondent failed to act to

the best of its ability.  *See Nippon Steel Corp. v. U.S.*, 337 F.3d at 1373, 1382,

1384 (Fed. Cir. 2003).  This legal standard is not an argument that can be waived.

In this case, the "subject showing" standard required Commerce to consider

all factors that are applicable specifically to Supermel, including:

- Under the Brazilian law, Supermel operates as a "micro and small business."  *See* 2SACQR, at 18.

- Under the Brazilian law, Supermel is not required to maintain inventory records.  *See* Final IDM, at 18.

- Under the Brazilian law, Supermel can report calculated numbers for inventory of raw materials.  *See* ILVQ, at 12-13.

- Supermel does not have a formal accounting system.  *See* DQR, at 10.

- Supermel does not have an inventory control system integrated with accounting.  *See* DQR, at 7.

- Supermel does not have an accounting journal for inventory records. *See* ILVQ, at 12-13.

- Supermel relies on an external accountant to prepare financial statements.  *See* 2SACQR, at 3-4; *see also* ILVQ, at 12-13.

- Supermel's external accountant calculates the inventory values reported for the "stock" account in the financial statements.  *See* ILVQ, at 12-13.

Furthermore, Commerce's decision to apply adverse inference must be supported by substantial evidence.   Support by substantial evidence must be determined on the entirety of the record, considering the evidence that detracts from the agency's conclusion.  *See Siemens Energy, Inc. v. United States*, 806 F.3d 1367, 1369 (Fed. Cir. 2015) (citing *Universal Camera Corp. v. NLRB*, 340 U.S.

474, 488 (1951)).  Therefore, pointing out the record evidence that detracts from

Commerce's conclusion is not a legal argument that can be waived.

Finally, Supermel could not exhaust any argument against Commerce's

application of adverse inference until Commerce actually applied adverse

inference.  In the Preliminary Determination, Commerce did not determine that

Supermel failed to act to the best of its ability.  *See generally* Preliminary Issues

and Decision Memorandum ("Prelim IDM") (PR 288).  As such, Supermel did not

need to raise in its administrative case brief that it has requested assistance as a

small business.  However, this factor became relevant when Commerce applied

adverse inference in the Final Determination.  Therefore, with respect to any

factors that are relevant in determining whether Supermel failed to act to the best

of its ability (such as its request for assistance under 19 U.S.C. § 1677m(c)(1)[9]),

Supermel did not waive any argument.

## C. Commerce failed to describe any deficiency in Supermel's responses

In the Final Determination, Commerce found for the first time that there

were discrepancies between Supermel's honey purchase data and the unaffiliated

beekeepers' sales invoices.  *See* Final IDM, at 13.  However, Commerce claimed

that it "alerted Supermel to the discrepancies and asked Supermel to confirm the

---

[9] *See* Pl. Br. at 40-41.

Public Document

quantities and values of its purchases." *Id.*  This claim is unsupported by substantial evidence.

Commerce claimed that it issued a second supplemental Section D questionnaire because of the alleged discrepancies.  *Id.*  However, the second supplemental questionnaire was issued on October 20, 2021.[10]  The beekeepers submitted their sales invoices on October 26, 2021.[11]  The alleged discrepancies did not even arise at the time of issuing the second supplemental questionnaire.  Therefore, Commerce could not possibly notify Supermel of the alleged discrepancies in the second supplemental questionnaire.

In its response brief, Defendant claims that Commerce informed Supermel of the "nature of the deficiency" by issuing two supplemental questionnaires "on the topic of verifying its cost information."  *See* Def. Br. at 26.  However, Commerce failed to describe any deficiency in these questionnaires.  In the first supplemental questionnaire, Commerce did not describe any deficiency in Supermel's responses.  Commerce simply requested Supermel to explain how purchased honey is recorded in its normal books and records.  *See* SDQR, at 2.

---

[10] *See* Second Supp. Section D Questionnaire (October 20, 2021) (CR 274; PR 236)

[11] *See* Beekeeper 1 Supplemental Response (October 26, 2021) ("B1 SQR") (CR 277; PR 241), at Exhibit SUP-1; *see also* Beekeeper 2 Response (October 26, 2021) ("B2 SQR") (CR 278; PR 242), at Exhibit SUP-1.

Supermel responded that purchased honey is reported as <u>debit</u> for the "stock" account. *Id.* at 2-3. Supermel then reconciled its honey purchases to the total debit amount reported for the "stock" account and supplied supporting invoices/receipts. *Id.* at Ex. SD-12 & SD-13. Supermel further explained that, unlike processing costs which are recorded in the appropriate expense accounts, "raw material costs are recorded in the honey purchase data." *Id.* at 17. These statements and supporting information clearly showed how purchased honey is recorded in Supermel's books and records.

In the second supplemental questionnaire, Commerce alleged that there was a discrepancy between the total quantity and value of unprocessed honey reported by Supermel and the unaffiliated beekeepers. *See* 2SDQR, 13-14. However, that allegation was due to Commerce's error in summarizing Supermel's honey purchase data. *Id.* Moreover, as conceded by Defendant, Supermel was not required to explain any discrepancy between its responses and the unaffiliated beekeepers' responses.[12] Therefore, the erroneous description of the alleged

---

[12] *See* Def. Br. at 22-23 ("Commerce's requests may have been triggered by the information submitted by the independent beekeepers, but the data that Commerce attempted to verify was Supermel's data, in the form of its own purchases of unprocessed honey.")

discrepancy did not constitute a description of the "nature of deficiency" as required under 19 U.S.C. § 1677m(d).

As explained above, there was no deficiency in Supermel's responses because Supermel tied its honey purchases to accounting records by submitting journal entries from its normal books and records (i.e., SIGE) and supporting invoices/receipts.  The alleged discrepancies between Supermel's honey purchase data and the unaffiliated beekeepers' sales invoices were not a deficiency in Supermel's responses.  Even if *arguendo* the discrepancies could be considered a deficiency in Supermel's responses, Commerce only described the discrepancies for the first time in the Final Determination.  Therefore, Supermel did not have an opportunity to address the discrepancies.  Despite Defendant's claim that Commerce asked questions "on the topic" of verifying Supermel's reported cost information, none of the questions described any deficiency in Supermel's responses.  Moreover, notwithstanding Commerce's failure to describe any deficiency, Supermel acted to the best of its ability by clarifying on factual errors made by Commerce and providing additional documentation.

### III. Supermel is a producer of the subject merchandise

#### A. Commerce's finding that Supermel performed "minimal" processing is unsupported by substantial evidence

Section 773(b)(1) of the Act provides that Commerce may determine below-cost sales if it "has reasonable grounds to believe or suspect that sales of the foreign like product under consideration for normal value have been made at prices which represent less than the cost of production of that product."  19 U.S.C. § 1677b(b)(l).  For Supermel, "the foreign like product under consideration for normal value" was the processed honey produced by Supermel and sold in Australia.  *See* Supermel's Sections B-C Response (CR 88-92; PR 116-120) ("BCQR"), at Ex. B-1.

To produce the processed honey sold in Australia, Supermel purchased unprocessed honey from hundreds of unaffiliated beekeepers.  *See* Supermel's Response to the Initial Request for Information (CR 38-39; PR 79)*,* at 1-3.  Supermel then performed extensive processing including blending, heat treatment, homogenization, filtration, dehumidification, packaging, inspection and certification.  *Id.*; *see also* DQR, at Ex. D-4.  This processing changed at least four of the five product characteristics examined by Commerce in the underlying investigation.  *See* Pl. Br. at 44; *see also* SDQR, at 10.  Supermel also performed

extensive testing required to export the processed honey to Australia.  *See*

2SACQR, at 17 & 18.

Section 773(b)(3)(A) provides that the cost of production shall be equal to

the sum of "the cost of materials and fabrication or other processing of any kind

employed in producing the foreign like product;" selling, general and

administrative expenses; and the packaging expenses.  *See* 19 U.S.C. §

1677b(b)(3)(A).  The statute does not provide that the "cost of materials" must be

for materials that are outside scope of the investigation.  In this case, the raw

material used in producing the foreign like product was unprocessed honey.

Supermel purchased the unprocessed honey from unaffiliated beekeepers at market

prices that were above the beekeepers' cost of production.  *See* Prelim IDM, at 17.

Therefore, Supermel's acquisition costs represent the cost of materials described in

Section 773(b)(3)(A).

Supermel also incurred the cost of processing employed in producing the

honey sold in Australia.  The processing costs included labor, energy, machinery,

equipment, supplies, and other overheads.  *See* DQR, at Ex. D-11.  These costs

represent the cost of "fabrication or other processing of any kind employed in

producing the foreign like product" described in Section 773(b)(3)(A).  As

explained above, Supermel's manufacturing process included blending, heat

treatment, homogenization, filtration, dehumidification, packaging, inspection, certification, and testing.   *Id.* at Ex. D-4.  Therefore, Commerce's finding that the processing was "minimal" is unsupported by substantial evidence.

In the underlying investigation, Commerce determined that beekeepers are the producers of the foreign like product because the unprocessed honey purchased by Supermel falls within the scope of the investigation.  *See* Prelim IDM, at 16-17. However, the statute does not require the raw materials under Section 773(b)(3)(A) to be out-of-scope merchandise.  The only requirement is that the reported cost of production includes both the cost of materials and the cost of processing the materials.  Supermel incurred and reported both of these costs.  Therefore, Commerce should consider Supermel as the producer of the foreign like product sold in Australia.

### B. Supermel did not waive any argument about its producer status with respect to the alleged discrepancies between Supermel honey purchase data and the unaffiliated beekeepers' sales invoices

Defendant-Intervenor argues Supermel failed to exhaust its administrative remedies by not raising the argument about its producer status in its administrative case brief.  *See* Def. Int. Br. at 33-34.  However, at the time, Commerce did not apply AFA to Supermel based on the alleged discrepancies between Supermel's honey purchase data and the unaffiliated beekeepers' sales invoices.  Accordingly,

Supermel could not exhaust any argument about the alleged discrepancies until Commerce issued the Final Determination.  In its opening brief, Supermel argued that the alleged discrepancies are not a lawful basis for applying AFA to Supermel because Supermel's producer status makes the discrepancies irrelevant.  *See* Pl. Br. at 41-45.  Therefore, Supermel did not waive the argument about its producer status to the extent that it is relevant to the alleged discrepancies.

Defendant-Intervenor argues that the issue of whether or not Supermel is a producer of the subject merchandise is moot because "Commerce in fact attempted to verify *Supermel's acquisition costs*."  *See* Def. Int. Br. at 34.  In fact, Defendant also states that "Commerce's requests may have been triggered by the information submitted by the independent beekeepers, but the data that Commerce attempted to verify was Supermel's data."  Def. Br. at 22-23.  However, both Defendant and Defendant-Intervenor make contradictory statements about Supermel's responsibilities in the underlying investigation as follows:

- Defendant states that Commerce sent a supplemental questionnaire to Supermel to "clear up discrepancies."  *See* Def. Br. at 19.

- Defendant-Intervenor states, "None of Supermel's reported honey purchase data reconciles with the data submitted by Supermel's beekeeper suppliers."  *See* Def. Int. Br. at 22.

27

Public Document

- Defendant-Intervenor also states that the information provided Supermel "does not explain why Supermel's reported honey purchase data does not match the beekeepers' records." *Id.* at 31.

These statements imply that Supermel was responsible for explaining the alleged discrepancies. Therefore, until the Court confirms that Supermel was not responsible for explaining the discrepancies, the issue of whether or not Supermel is a producer of subject merchandise is not moot.

## C. Commerce cannot apply AFA to a respondent for the failure of an unaffiliated supplier

In the underlying investigation, Commerce put parties on "notice" for a future action that is unlawful. Commerce stated that all beekeepers are now "on notice that they will be required to submit accurate cost information that is fully supported by documentary evidence and is verifiable by Commerce officials" and "{f}ailure to provide such information {in the future administrative reviews} could result in the application of AFA." *See* Prelim IDM, at 18. However, beekeepers are not respondents in this proceeding. To apply AFA to a cooperative respondent based on an unaffiliated supplier's failure to comply, Commerce "must link {the cooperative respondent} to its supplier's failures, as a matter of fact." *See Tianjin Magnesium Intern. Co., Ltd. v. United States*, Court No. 09-00535, Slip Op. 11-17,

Public Document

at 7 (Ct. Int'l Trade, Feb. 11, 2011).  Therefore, Commerce cannot apply AFA to a respondent simply because a beekeeper fails to provide information.

Defendant claims that "Commerce routinely provides notice that it expects and will insist on cooperation."  Def. Br. at 33.  However, in this case, Commerce did not simply insist on cooperation.   Commerce publicly announced that it will unlawfully apply AFA to respondents if beekeepers fails to comply with Commerce's requirements.  In other words, Commerce notified parties that it will make an unlawful decision in future administrative reviews.  Therefore, Commerce should not be permitted to rely on this notice in future administrative reviews.

## CONCLUSION

For the reason discussed in this brief, Plaintiff respectfully urge this Court to reject the arguments of Defendant and Defendant-Intervenor in their response briefs.

Respectfully submitted,

/s/ Pierce J. Lee
Daniel J. Cannistra
Pierce J. Lee

Crowell & Moring
1001 Pennsylvania Ave., N.W.
Washington, D.C.  20004

Public Document

Tel: (202) 508-8780
Email: plee@crowell.com

*Counsel for Plaintiffs Apiário
Diamante Comercial Exportadora
Ltda and Apiário Diamante Produção
e Comercial de Mel Ltda*

Public Document

# <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains 5,265 words, including text, footnotes, headings, and exhibits and excluding the table of contents, table of authorities, and counsel's signature block.

Pierce Lee