A-351-857<br>
Remand<br>
Slip Op. 24-64<br>
POI: 04/01/2020–03/31/2021<br>
**Public Document**<br>
E&C/OV: MB

*Apiário Diamante Comercial Exportadora Ltda. and Apiário Diamante Produção e Comercial de Mel Ltda. v. United States*,
Court No. 22-00185, Slip Op. 24-64 (CIT June 5, 2024)
Raw Honey from Brazil

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination in accordance with the opinion and remand order of the U.S. Court of International Trade (the Court) in *Apiário Diamante Comercial Exportadora Ltda. and Apiário Diamante Produção e Comercial de Mel Ltda. v. United States*, Court No. 22-00185, Slip Op. 24-64 (CIT June 5, 2024) (*Amended Remand Order*). These final results of redetermination concern the *Final Determination* in the antidumping duty (AD) investigation of raw honey from Brazil covering the period of investigation (POI) April 1, 2020, through March 31, 2021.[1]

The Court remanded to Commerce for further consideration its decision to rely entirely on adverse facts available (AFA) in assigning an estimated dumping margin to Supermel,[2] and

---

[1] *See Raw Honey from Brazil: Final Determination of Sales at Less Than Fair Value,* 87 FR 22182 (April 14, 2022) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Raw Honey from Brazil: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 FR 66533 (November 23, 2021) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM); *see also* Memorandum, "Preliminary Affiliation and Single Entity Memorandum for Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda," dated November 17, 2021. Supermel is the collective trade name of Apiário Diamante Comercial Exportadora Ltda. and Apiário Diamante Produção e Comercial de Mel Ltda. In the *Preliminary Determination*, we found that the two companies are affiliated within the meaning of section 771(33) of the Act and should be treated as a single entity, pursuant to 19 CFR 351.401(f). No parties commented on this finding. Accordingly, for the *Final Determination,* we treated these companies as a single entity.

for Commerce to determine a new estimated dumping margin for Supermel. Consistent with the *Amended Remand Order*, we have determined a new estimated dumping margin for Supermel, as discussed below.

## II.     BACKGROUND

### A. Commerce's *Final Determination*

On May 18, 2021, Commerce initiated the AD investigation on raw honey from Brazil.[3] On June 7, 2021, Commerce limited the number of respondents selected for individual examination to the two exporters and producers that accounted for the largest volume of entries of raw honey into the United States during the POI: Melbras Importadora E Exportadora Agroindustrial Ltda. (Melbras); and Supermel.[4] Accordingly, Commerce issued AD questionnaires to Melbras and Supermel.[5] Commerce also solicited certain information regarding Melbras' and Supermel's direct involvement in the production of honey and their sourcing of honey from beekeepers that produced and supplied honey.[6]

On November 23, 2021, Commerce published the *Preliminary Determination*. Also on November 23, 2021, Supermel alleged that Commerce made certain ministerial errors in the calculation of its preliminary dumping margin in the *Preliminary Determination*.[7] On December 17, 2021, we published an amended preliminary determination to correct ministerial errors in Supermel's margin calculation, reducing Supermel's estimated dumping margin from 29.61 percent to 10.52 percent.[8]

---

[3] *See Raw Honey from Argentina, Brazil, India, Ukraine, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 86 FR 26897 (May 18, 2021).
[4] *See* Memorandum, "Respondent Selection," dated June 7, 2021.
[5] *See* Commerce's Letters, "Initial AD Questionnaire," dated June 9, 2021 (AD Questionnaire).
[6] *See* Commerce's Letters, "Cost Reporting Questionnaire," dated June 10, 2021.
[7] *See* Supermel's Letter, "Supermel's Ministerial Error Comments," dated November 23, 2021.
[8] *See Raw Honey from Brazil: Amended Preliminary Determination of Sales at Less Than Fair Value*, 86 FR 71614 (December 17, 2021) (*Amended Preliminary Determination*); *see also* Memoranda, "Allegation of a Ministerial

In both the *Preliminary Determination* and *Amended Preliminary Determination*, we relied on Supermel's reported cost information, including its honey acquisition and processing costs, as a proxy for the total cost of production (COP) because the acquisition prices Supermel paid were higher than the honey producers' reported COP.[9]  Following the *Preliminary Determination*, we issued an in lieu of on-site verification questionnaire to verify the information we relied upon for the final determination.  In this questionnaire, we requested that Supermel demonstrate how its reported costs tied to its accounting system.[10]

On April 14, 2022, Commerce published the *Final Determination*.  We explained that Supermel failed to reconcile, and provide documentation to support, the quantity and value of its honey purchases to its accounting records and system.  After receiving responses to its ILOVQ, Commerce determined that there were several discrepancies in the cost of production data submitted by Supermel and the unaffiliated beekeepers, and that because of the deficient responses, it was unable to verify the cost data.  Thus, Commerce determined that Supermel impeded the investigation by withholding information necessary to allow it to verify its reported data such that resorting to facts available was warranted.[11]  Specifically, Supermel:  (1) failed to provide requested source documentation;[12] and (2) supplied COP data that was irreconcilable to the information supplied by its raw honey suppliers.[13]  Moreover, Supermel failed to act to the best of its ability in responding to Commerce's requests because necessary information to support Supermel's reported purchases of honey as recorded in its normal books was not

---

Error in the Preliminary Determination," dated December 13, 2021 (Ministerial Error Memorandum); "Analysis Memorandum for Supermel – Ministerial Error Allegations," dated December 13, 2021; and "Amended Calculation of All-Others Rate," dated December 13, 2021 (Amended Calculation of All-Others Rate).
[9] *See Preliminary Determination* PDM at 17.
[10] *See* Commerce's Letter, "In Lieu of Verification Questionnaire," dated December 10, 2021 (ILOVQ), at 5-7.
[11] *See Final Determination* IDM at 18-20.
[12] *Id.* at 12-17.
[13] *Id.* at 12-14.

available on the record and Supermel withheld information in its ILOVQ response.[14] Accordingly, we declined to rely on Supermel's COP data for the *Final Determination*, and instead, we relied entirely on AFA for assigning an estimated dumping margin to Supermel.[15]

As AFA, we assigned Supermel an estimated dumping margin of 83.72 percent.[16] Because the only rate from the *Final Determination* that was not zero, *de minimis*, or based entirely on AFA, was the rate calculated for Melbras, 7.89 percent, the rate calculated for Melbras was also assigned as the rate for all other producers and exporters.[17]

B.  *Amended Remand Order*

In the *Amended Remand Order*, the Court held that Commerce's determination to apply total AFA to Supermel was not supported by substantial evidence. Specifically, the Court held that Commerce's finding, that discrepancies between beekeeper COP data and Supermel's COP data rendered Supermel's COP data unverifiable, was misplaced.[18] Rather, the Court held that the discrepancies between Supermel's reported COP data and its suppliers' COP data were: (1) relatively minor; (2) understandable given the beekeepers' lack of recordkeeping; and (3) did not detract from copious information[19] that already existed on the record that Commerce could have used to support relying on Supermel's COP.[20] Thus, "the principal information that Commerce found Supermel to have withheld was provided in full by the complete set of journal entries for raw honey purchases," and Commerce could not therefore lawfully conclude that it must resort

---

[14] *Id*. at 18.
[15] *Id.*, 87 FR at 22183 and IDM at 12.
[16] *Id.*, 87 FR at 22183.
[17] *Id.*
[18] *See Amended Remand Order* at 15-21.
[19] *Id*. at 41 ("Commerce had been provided: (1) a complete database of all purchases of raw honey and beeswax Supermel made from its many unaffiliated beekeepers during the POI, (2) total values for those two categories of purchases that when added together were substantially equal to the total value recorded in Supermel's accounting system, and (3) a breakdown of costs by {control number (CONNUM)} and an explanation that "Supermel reported the same per-unit processing costs for all of its CONNUMs.")
[20] *Id*. at 15-41.

to facts available.[21] The Court also identified each example that Commerce used to support its finding and determined that Commerce's conclusion was not supported by the record. Specifically, the Court held that Commerce: (1) failed to appropriately notify Supermel of the deficiencies in its responses as required by section 782(d) of the Tariff Act of 1930, as amended (the Act); (2) failed to consider information responsive to questions when it was provided elsewhere in the record; and (3) failed to support its conclusion that Supermel could not tie its honey purchases to its accounting system.[22] Accordingly, the Court remanded the *Final Determination* to Commerce to reconsider, based on the existing record, its decision to apply AFA to Supermel, and to determine a new estimated dumping margin for Supermel.[23]

C. *Draft Results of Redetermination*

Commerce released its draft results of redetermination on July 12, 2024,[24] in which we determined that the complete reconciliation of Supermel's COP data to its suppliers' reported data is immaterial to the analysis of Supermel's data, and that Supermel's data is otherwise reliable and verifiable on the basis of other information available on the record. As a result of this change, we reinstated the dumping margin calculated for Supermel in the *Amended Preliminary Determination* of 10.52 percent. Additionally, we reinstated the estimated dumping margin of 9.38 percent assigned to all other producers and exporters that was established in the *Amended Preliminary Determination*.

---

[21] *Id*. at 41-42.
[22] *Id*. at 15-41.
[23] *Id*. at 43.
[24] *See* Draft Results of Redetermination Pursuant to Court Remand, *Apiário Diamante Comercial Exportadora Ltda. and Apiário Diamante Produção e Comercial de Mel Ltda. v. United States*, Court No. 22-00185, Slip Op. 24-64 (CIT June 5, 2024), dated July 12, 2024 (Draft Remand).

The American Honey Producers Association and the Sioux Honey Association (collectively, the petitioners) submitted timely comments on the Draft Remand on July 24, 2024.[25] Supermel submitted a letter in lieu of comments of the Draft Remand on July 24, 2024.[26]

## III.  ANALYSIS

Pursuant to the *Amended Remand Order*, we have determined a new estimated dumping margin for Supermel. In the *Preliminary Determination* and *Amended Preliminary Determination*, we relied on Supermel's reported information,[27] and ultimately, calculated a 10.52 percent margin using honey acquisition and processing costs as a proxy for COP.[28] In accordance with the *Amended Remand Order*, we have reanalyzed Supermel's honey acquisition costs, relying on the Court's conclusion that the failure of those costs to reconcile with the beekeeper's record was not definitive to the issue. Consistent with the Court's holding, Commerce has determined on remand that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data, based on other reliable and verifiable evidence on the record.[29] Furthermore, in accordance with the Court's *Amended Remand Order*, we have concluded that the data are otherwise reliable and verifiable on the basis of other information available on the record.[30]

Accordingly, on remand, we are reinstating the dumping margin calculated for Supermel in the *Amended Preliminary Determination*.[31] For detailed discussions of both the underlying analysis of Supermel's data and Commerce's calculations, *see* the *Preliminary*

---

[25] *See* Petitioners' Letter, "Petitioners' Comments on the Department's Draft Remand Redetermination," dated July 24, 2024 (Petitioners' Draft Remand Comments).
[26] See Supermel's Letter, "Supermel's Letter in Lieu of Comments on Draft Remand Redetermination Pursuant to Court Remand," dated July 24, 2024.
[27] *See generally Preliminary Determination*; *see also Amended Preliminary Determination*.
[28] *See Amended Preliminary Determination*, 86 FR at 71615.
[29] *See Amended Remand Order* at 20.
[30] *Id.* at 20 and 41-42.
[31] *See Amended Preliminary Determination*, 86 FR at 71615.

6

*Determination* PDM,[32] the *Amended Preliminary Determination*,[33] the Preliminary Analysis Memorandum,[34] the Preliminary Cost Calculation Memorandum,[35] and the Ministerial Error Memorandum.[36]  Because we are relying on the estimated dumping margin calculated for Supermel from the *Amended Preliminary Determination*, we are also reinstating the estimated dumping margin assigned to all other producers and exporters that was established in the *Amended Preliminary Determination*.[37]

## IV.   INTERESTED PARTY COMMENTS

As noted above, Commerce released the Draft Remand Results on July 12, 2024.[38]  The petitioners submitted comments on July 24, 2024,[39] which are addressed below.

**Comment 1: Whether Commerce Should Continue to Apply AFA**

*Petitioners' Comments*[40]

The following is a verbatim summary of argument submitted by the petitioners.[41]  For further details, *see* the Petitioners' Draft Remand Comments at 4 through 49.

> {The p}etitioners disagree with the Court's conclusion that {Commerce's} application of {AFA} in determining an {AD} margin for mandatory respondent {Supermel} is not supported by substantial evidence.  {Commerce} should continue to find that application of AFA was warranted with respect to Supermel based on sufficient record evidence that was not accounted for in the Court's opinion.  However, because the Court instructed {Commerce} to determine a new estimated dumping margin for Supermel, should {Commerce} continue to calculate a dumping margin the final remand results, it should do so under protest.

---

[32] *See generally Preliminary Determination* PDM.
[33] *See generally Amended Preliminary Determination*.
[34] *See* Memorandum "Preliminary Analysis Memorandum for Supermel," dated November 17, 2021 (Preliminary Analysis Memorandum).
[35] *See* Memorandum "Cost of Production and Constructed Value Calculation Adjustments for the Preliminary Determination – Apiário Diamante Supermel," dated November 17, 2021 (Preliminary Cost Calculation Memorandum).
[36] *See* Ministerial Error Memorandum at 2-3.
[37] *Id*.
[38]  *See* Draft Remand.
[39]  *See* Petitioners' Draft Remand Comments.
[40] *Id.*
[41] *Id.*

7

> {Commerce's} application of total AFA to Supermel in the underlying investigation was warranted and is supported by substantial evidence. {Commerce} accurately described the numerous critical deficiencies in the questionnaire responses of Supermel and its beekeeper suppliers. Moreover, the Court's conclusions ignore numerous other deficiencies in the responses of Supermel and its suppliers which were detailed by {the p}etitioners in the proceeding. These deficiencies include Supermel's failure to provide accurate sales reconciliations; Supermel's failure to report accurate payment dates, gross unit prices, and packing expenses and materials; Supermel's failure to provide accurate information regarding its control number {} characteristics; the failure of Supermel and its suppliers to provide complete and accurate cost of production information; Supermel's unsubstantiated claim of an offset to its direct material costs; and the failure of Supermel and its suppliers to provide accurate and complete responses to {Commerce's} {ILOVQ}.
>
> The Court improperly reweighed factual findings and substituted its judgment for that of {Commerce}, and the Court's conclusions in the Remand Order do not reflect the facts of the underlying proceeding. The information relied upon by the Court in determining that Supermel demonstrated how its purchase database ties to its accounting system was created solely for the purpose of the underlying proceeding and does not actually tie to Supermel's books and records.
>
> Consequently, in its final remand redetermination, {Commerce}should find that total AFA was warranted with respect to Supermel.

No other interested party commented on this issue.

**Commerce's Position:** We disagree with the petitioners and continue to reinstate the dumping margin calculated for Supermel in the *Amended Preliminary Determination* of 10.52 percent. As noted by the petitioners, the Court has instructed Commerce to "{determine} a new estimated dumping margin for Supermel."[42] Consistent with the Court's holding, Commerce is determining[43] on remand that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data.[44] Commerce's discussion regarding its underlying analysis of Supermel's data can be found in the Preliminary Cost

---

[42] *See Amended Remand Order* at 44.
[43] We note that although the Draft Remand stated we are presuming that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data, our conclusion in this regard is better described as a determination.
[44] *Id.* at 20.

Calculation Memorandum. Furthermore, in accordance with the Court's *Amended Remand Order*, we have concluded that Supermel's data is otherwise reliable and verifiable on the basis of other information available on the record.[45] Because these data are reliable and verifiable on the basis of other information available on the record, AFA is not warranted in this case. Therefore, we are reinstating the dumping margin calculated for Supermel in the *Amended Preliminary Determination*.[46]

Further, the rate assigned to Supermel in this remand determination for cash deposit purposes will soon be overtaken by forthcoming events. Specifically, the first administrative review of the AD order on raw honey from Brazil is currently underway with a final results deadline of November 12, 2024, unless extended.[47] The final results of the first administrative review will set the liquidation rate for that period of review and a new cash deposit rate. The cash deposit rate set by the first administrative review will supersede any cash deposit rate set by this remand determination.

**Comment 2: Whether Commerce Should Include an Offset to Supermel's Direct Material Costs**

*Petitioners' Comments*[48]

The following is a verbatim summary of argument submitted by the petitioners.[49] For further details, *see* the Petitioners' Draft Remand Comments at 49.

> {S}hould {Commerce} continue to calculate a dumping margin, {Commerce} should deny Supermel's claimed offset to its direct material costs because Supermel failed to demonstrate that its reported prices of unprocessed honey are inclusive of

---

[45] *Id.*, at 20 and 41-42.
[46] *See Amended Preliminary Determination*, 86 FR at 71615
[47] *See Raw Honey from Brazil: Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review; 2021–2023*, 89 FR 55582, (July 5, 2024). If it is not practicable to complete the review within 120 days after the date of publication of the preliminary results, section 751(a)(3)(A) of the Act and 19 CFR 351.213(h)(2) allow Commerce to extend the time limit for the final results to a maximum of 180 days after the date of publication of the preliminary results.
[48] *See* Petitioners' Draft Remand Comments
[49] *Id.*

9

> the input credit from the Program of Social Integration ("PIS") and the Contribution for the Financing of Social Security ("COFINS").

No other interested party commented on this issue.

**Commerce's Position:**  We disagree with the petitioners and, on remand, continue to include the offset to Supermel's direct material costs.  According to the petitioners, the record does not support Supermel's claimed offset for PIS/COFINS taxes paid on raw material inputs because: (i) the company did not tie the offset value to its accounting records; (ii) the offset value appearing in the cost reconciliation was not associated with any corresponding trial balance account number(s); and (iii) the supplier invoices do not separately itemize the PIS/COFINs taxes paid.  In response to Commerce's supplemental questionnaire, Supermel explained and demonstrated how it derived the offset reported in its cost database.[50]  Supermel also provided Commerce with the Brazilian tax regulation that underpins the direct material input tax scheme.[51]  In addition, Supermel further explained in a section D supplemental questionnaire response that under the Brazilian PIS/COFINS tax system, a credit is received from the government for PIS/COFINS taxes paid on material inputs used in the production of goods that are exported.[52]

Commerce evaluated the information provided in the original section D response as it pertained to the PIS/COFINS taxes and included in a supplemental questionnaire several follow-up questions that Supermel answered in full.[53]  We did not request either in the initial or supplemental questionnaires that Supermel specifically reconcile the offset value to its accounting records.[54]  Thus, the petitioners' argument that we should deny the offset because

---

[50] *See* Supermel's Letter, "Antidumping Duty Investigation of Raw Honey from Brazil:  Supermel's Section D Second Supplemental Questionnaire Response," dated November 4, 2021 (Supermel's November 4 SDQR), at 14.
[51] *See* Supermel's Letter, "Antidumping Duty Investigation of Raw Honey from Brazil:  Supermel's Sections A-C Supplemental Questionnaire Response," dated October 6, 2021, at Exhibit SUPB-9.
[52] *See* Supermel's November 4 SDQR at 14.
[53] *Id.*
[54] *See* AD Questionnaire; *see also* Commerce's Letter regarding Section D Supplemental Questionnaire, dated September 2, 2021; *and* Commerce's Letter, 2nd Section D Supplemental Questionnaire, dated October 21, 2021.

Supermel did not tie the offset value to its accounting records is unpersuasive. According to the petitioners, one of the reasons the claimed offset is unsupported is because the sample supplier invoices do not separately identify amounts for PIS/COFINS taxes. We do not find that this supports a conclusion that Supermel was not charged the PIS/COFINS taxes on its material inputs. In this regard, we note that Commerce has explained related to the Brazilian tax system that "{w}hile the amount of PIS and COFINS taxes paid may not be separately identified on the invoices received in connection with domestic input purchases, the taxes are embedded in the actual amount paid."[55] Regarding the petitioners' assertion that the offset value in the cost reconciliation was not associated with any corresponding trial balance account number, we note that Supermel in its normal books and records does not have a separate account for PIS/COFINs offset or tax credits.[56] Furthermore, we did not request that Supermel specifically reconcile the offset value to its accounting records.

For the foregoing reasons, in calculating a margin for Supermel on remand, we have accepted the company's claimed offsets to raw materials

## V.   FINAL RESULTS OF REDETERMINATION

Pursuant to the Court's *Amended Remand Order*, and in consideration of the record evidence, Commerce has provided additional consideration regarding reinstating the dumping margin calculated for Supermel. As a result, we have determined the estimated weighted-average dumping margins for Supermel and all other producers and/or exporters,[57] as follows:

---

[55] *See Silicomanganese from Brazil: Final Results of Antidumping Duty Administrative Review,* 69 FR 13813 (March 24, 2004), and accompanying IDM at Comment 16.
[56] *See* Supermel's Letter, "Antidumping Duty Investigation of Raw Honey from Brazil: Apiario Diamante Supermel's Section A Second Supplemental Questionnaire Response," dated June 30, 2021, at Exhibit A-8.
[57] *See* Amended Calculation of All-Others Rate; *see also Amended Preliminary Determination,* 86 FR at 71615.

| Producer/Exporter | Estimated Weighted-Average Dumping Margin (percent) |
|---|---|
| Apiário Diamante Comercial Exportadora Ltda/Apiário Diamante Produção e Comercial de Mel Ltda (Supermel) | 10.52 |
| All Others | 9.38 |

If Commerce's final results of redetermination are sustained by the Court, Commerce intends to publish a notice of amended final determination in the *Federal Register*, consistent with *Timken*,[58] and issue appropriate customs instructions to U.S. Customs and Border Protection, consistent with the redetermination above.

8/26/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
    performing the non-exclusive functions and duties of the
    Assistant Secretary for Enforcement and Compliance

---

[58] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).