NONCONFIDENTIAL

### UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | | |
|---|---|---|
| APIÁRIO DIAMANTE COMERCIAL EXPORTADORA LTDA AND APIÁRIO DIAMANTE PRODUÇÃO E COMERCIAL DE MEL LTDA, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Court No. 22-00185 |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant, | ) | |
| and, | ) | |
| v. | ) ) | |
| AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION, | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

### DEFENDANT-INTERVENORS' COMMENTS IN OPPOSITION TO THE COMMERCE DEPARTMENT'S REMAND REDETERMINATION

R. ALAN LUBERDA
ELIZABETH C. JOHNSON
MELISSA M. BREWER
MALIHA KHAN
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated: September 25, 2024

**NONCONFIDENTIAL**

Table of Contents

Page

I.    PROCEDURAL HISTORY.................................................................1

II.   INTRODUCTION..........................................................................2

III.  ARGUMENT..............................................................................2

   A.    Commerce's Application of AFA in Determining an Antidumping
         Margin for Supermel in its Final Determination is Supported by
         Substantial Evidence.................................................................4

      1.    Commerce's Reliance on the Amended Remand Order
            Ignored Numerous Deficiencies in the Responses of
            Supermel and its Suppliers................................................4

         a.    Supermel Failed to Provide Accurate Sales
               Reconciliations.....................................................5

         b.    Supermel Reported Incorrect Payment Dates, Gross
               Unit Prices, and Packing Expenses and Materials............................7

         c.    Supermel Failed to Provide Accurate Information
               Regarding its CONNUM Characteristics
               [                           ]..............................................10

            i.    Corroboration of Sales of [
                  ] Honey and Certification Expenses..........10

            ii.   Corroboration of Certain CONNUM Characteristics
                  – HOMGT/U, FILTERT/U, COLORT/U..........................11

         d.    Supermel's Suppliers Withheld Cost of Production
               Information...........................................................11

            i.    Beekeeper 1.....................................................11

            ii.   Beekeeper 2.....................................................13

         e.    Supermel Incorrectly Claimed an Offset to
               DIRMAT..............................................................14

NONCONFIDENTIAL

Table of Contents
(continued)

Page

f.    The Responses of Supermel and its Beekeeper Suppliers to Commerce's Questionnaire in Lieu of Verification Were Deficient ........................................................16

    i.    Supermel Failed to Verify its Sales Information ..............16

    ii.    Supermel Failed to Verify its Cost Information ...............17

    iii.    Supermel's Suppliers Failed to Verify Their Cost Information ........................................................19

        (a)    Beekeeper 1 ............................................................19

        (b)    Beekeeper 2 ............................................................20

2.    The Respondent's Failure to Provide Requested Information Is the Relevant Inquiry ........................................................20

    a.    Deficiencies in Supermel's Response to Question 25 of the Second Supplemental Questionnaire ............................21

    b.    Deficiencies in Supermel's Response to Question 3.a.iii of the First Supplemental Questionnaire ............................23

    c.    Deficiencies in Supermel's Response to Question 18 of the First Supplemental Questionnaire .................................24

    d.    Deficiencies in Supermel's Response to Questions 7.b and 10 of the Second Supplemental Questionnaire ........................................................24

    e.    Deficiencies in Supermel's CONNUM-Specific Cost Reporting ........................................................26

3.    In the Amended Remand Order, the Court Improperly Reweighed Factual Findings and Substituted its Judgment for That of Commerce ........................................................26

B.    In its Remand Redetermination, Commerce Failed to Adequately Explain its Reasoning and Failed to Address Arguments Raised by Defendant-Intervenors ........................................................28

**NONCONFIDENTIAL**

Table of Contents
(continued)

Page

C.    In its Final Remand Redetermination, Commerce Erred in Finding
That Supermel Substantiated the Claimed Offset to its Direct
Material Costs ...................................................................................................31

NONCONFIDENTIAL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

<u>Allied Tube and Conduit Corp. v. United States</u>,
132 F. Supp. 2d 1087 (Ct. Int'l Trade 2001) ...........................................................33

<u>Altx, Inc. v. United States</u>,
370 F.3d 1108 (Fed. Cir. 2004)..............................................................................30

<u>Am. Tubular Prods., LLC v. United States</u>,
847 F.3d 1354 (Fed. Cir. 2017)..............................................................................32

<u>American Tubular Prods., LLC v. United States</u>,
38 CIT 1413 (2014) ...............................................................................................33

<u>Apiario Diamante Comercial Exportadora Ltda v. United States</u>,
Ct. No. 22-00185, Slip Op. 24-64 (Ct. Int'l Trade 2024) ("<u>Amended Remand
Order</u>") ....................................................................................................... *passim*

<u>Bonney Forge Corp. v. United States</u>,
560 F. Supp. 3d 1303 (Ct. Int'l Trade 2022) ...........................................................30

<u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>,
419 U.S. 281 (1974)..............................................................................4, 23, 29

<u>Coalition of Am. Flange Producers v. United States</u>,
448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ...................................................30, 31

<u>CS Wind Viet. Co. v. United States</u>,
832 F.3d 1367 (Fed. Cir. 2016)..............................................................................29

<u>Dalian Meisen Woodworking Co. v. United States</u>,
Ct. No. No. 20-00109, Slip Op. 23-60, 2023 Ct. Intl. Trade LEXIS 61 (Apr.
24, 2023) ...............................................................................................25

<u>Dillinger France S.A. v. United States</u>,
981 F.3d 1318 (Fed. Cir. 2020)..............................................................................33

<u>Foshan Shunde Yongjian Housewares & Hardware Co. v. United States</u>,
35 CIT 1398 (2011) ...............................................................................................28

<u>Goodluck India Ltd. v. United States</u>,
11 F.4th 1335 (Fed. Cir. 2021) ..............................................................................22

**NONCONFIDENTIAL**

Guangxi Jisheng Foods, Inc. v. United States,
   37 CIT 1282 (2013) ...........................................................................................26

Hung Vuong Corp. v. United States,
   483 F. Supp. 3d 1321, SLIP OP. 20-174, SLIP OP. 2020-174 (CIT 2020)............................25

Husteel Co. v. United States,
   491 F. Supp. 2d 1283 (Ct. Int'l Trade 2007) ........................................................29

Hyundai Elec. & Energy Sys. Co. v. United States,
   15 F.4th 1078 (Fed. Cir. 2021) ........................................................................22

Hyundai Heavy Indus. v. United States,
   399 F. Supp. 3d 1305 (Ct. Int'l Trade 2019), aff'd without op., 2020 U.S.
   App. LEXIS 28,400 (Fed. Cir. 2020)..................................................................22

Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States,
   651 F. Supp. 3d 1348 (Ct. Int'l Trade 2023) ................................................... 32-33

Jiaxing Brother Fastener Co. v. United States,
   428 F. Supp. 3d 1364 (2020) ..........................................................................29

Nan Ya Plastics Corp. v. United States,
   810 F.3d 1333 (Fed. Cir. 2016)........................................................................32

Nippon Steel Corp. v. United States,
   337 F.3d 1373 (Fed. Cir. 2003)...................................................................21, 23

NMB Singapore Ltd. v. United States,
   557 F.3d 1316 (Fed. Cir. 2009)........................................................................29

Nucor Corp. v. United States,
   612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ........................................................27

Polyethylene Retail Carrier Bag Comm. v. United States,
   29 CIT 1418 (2005) ......................................................................................27

QVD Food Co. v. United States,
   658 F.3d 1318 (Fed. Cir. 2011)........................................................................32

SKF USA, Inc. v. United States,
   630 F.3d 1365 (Fed. Cir. 2011)........................................................................30

Taizhou United Imp. & Exp. Co. v. United States,
   570 F. Supp. 3d 1358 (Ct. Int'l Trade 2022), aff'd without op., 2023 WL
   4446629 (Fed. Cir. July 11, 2023) ....................................................................21

NONCONFIDENTIAL

Teknik Aluminyum Sanayi A.S. v. United States,
  Ct. No. 21-00251, Slip Op. 23-33, 2023 Ct. Intl. Trade LEXIS 36 (Mar. 16,
  2023) ...................................................................................................................24

Timken U.S. Corp. v. United States,
  421 F.3d 1350 (Fed. Cir. 2005).........................................................................30

Uttam Galva Steels Ltd. v. United States,
  476 F. Supp. 3d 1387 (Ct. Int'l Trade 2020) ....................................................33

Walgreen Co. v. United States,
  33 CIT 1620 (2009), aff'd, 620 F.3d. 1350, 1354-44 (Fed. Cir. 2010)...................................27

**Regulations**

19 C.F.R. § 351.401(b)(1).............................................................................32

**Administrative Determinations**

Draft Results of Redetermination Pursuant to Court Remand (July 12, 2024)
  ("Draft Remand Redetermination")................................................................. *passim*

Final Results of Redetermination Pursuant to Court Remand (Aug. 26, 2024)
  ("Remand Redetermination") .............................................................................1, 31

Issues and Decision Memorandum for the Final Affirmative Determination in the
  Less-Than-Fair-Value Investigation of Raw Honey from Brazil (Dep't
  Commerce Apr. 7, 2022) ("IDM") ....................................................................1, 4

Raw Honey From Brazil:
  Amended Preliminary Determination of Sales at Less Than Fair Value, 86
  Fed. Reg. 71,614 (Dep't Commerce Dec. 17, 2021) ("Amended Preliminary
  Determination") ...............................................................................................29, 31

Raw Honey From Brazil:
  Final Determination of Sales at Less Than Fair Value, 87 Fed. Reg. 22,182
  (Dep't Commerce Apr. 14, 2022) ("Final Determination") ........................................1, 2, 4, 26

NONCONFIDENTIAL

## DEFENDANT-INTERVENORS' COMMENTS IN OPPOSITION TO COMMERCE'S REMAND REDETERMINATION

## I.    PROCEDURAL HISTORY

On behalf of Defendant-Intervenors, the American Honey Producers Association and the Sioux Honey Association, we submit these comments in opposition to the remand redetermination of the U.S. Department of Commerce ("Commerce") issued in the appeal of Commerce's Final Determination in the less-than-fair-value investigation of Raw Honey from Brazil.  See Final Results of Redetermination Pursuant to Court Remand (Aug. 26, 2024) ("Remand Redetermination") (Remand PR 4) (ECF No. 41);[1] see also Raw Honey From Brazil: Final Determination of Sales at Less Than Fair Value, 87 Fed. Reg. 22,182 (Dep't Commerce Apr. 14, 2022) ("Final Determination") (PR 358), and Commerce's accompanying issues and decision memorandum, Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Brazil (Dep't Commerce Apr. 7, 2022) ("IDM") (PR 354).   The Remand Redetermination was issued in response to the Court's June 5, 2024, remand order in Apiario Diamante Comercial Exportadora Ltda v. United States, Ct. No. 22-00185, Slip Op. 24-64 (Ct. Int'l Trade 2024) ("Amended Remand Order") (ECF No. 37).   The Amended Remand Order set aside and remanded Commerce's Final Determination.  Id. at 44.

---

[1]    Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR__)" and "(PR__)") and the remand administrative record (i.e., "(Remand CR__)" and "(Remand PR__)") provided in the Index to the Administrative Record and Index to the Remand Record filed with the Court on September 2, 2022 (ECF No. 18) and September 9, 2024 (ECF No. 42), respectively.

NONCONFIDENTIAL

## II.    <u>INTRODUCTION</u>

Defendant-Intervenors file these comments in opposition to the <u>Remand Redetermination</u>.[2] Defendant-Intervenors also respectfully disagree with the <u>Amended Remand Order</u> because the record of the underlying investigation demonstrates that Commerce appropriately applied adverse facts available ("AFA") in the <u>Final Determination</u> with respect to Apiário Diamante Supermel ("Supermel"). In this regard, Defendant-Intervenors incorporate by reference herein their arguments in support of the <u>Final Determination</u>. These record documents include Defendant-Intervenors': 1) March 3, 2023, Confidential Response in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("CIT Response Brief") (ECF No. 26); and 2) July 24, 2024, Comments to Commerce on the draft remand redetermination (Remand CR 1) (Remand PR 3). These documents support Commerce's original AFA determination for Supermel in the <u>Final Determination</u>, and contest the Court's findings in the <u>Amended Remand Order</u>.

These documents also contest the dumping margin assigned to Supermel in the <u>Remand Redetermination</u> because that margin was calculated without addressing Defendant-Intervenors' argument pertaining to Supermel's claimed offset to its direct material costs.

## III.    <u>ARGUMENT</u>

In the appeal arising out of the <u>Final Determination</u>, the Court directed Commerce to reconsider its reliance on total AFA for Supermel and to determine a new dumping margin for Supermel. <u>See Amended Remand Order</u> at 44 (ECF No. 37). The Court found that Commerce's

---

[2]    These opposition comments are filed 30 days after the Commerce Department's issuance of the <u>Remand Redetermination</u>, in accordance with the Court's June 5, 2024, amended order (ECF No. 37), and R. 56.2(h) of the Court's rules.

NONCONFIDENTIAL

application of total AFA "was based on multiple findings of fact for which the record does not contain substantial evidence . . . ." Id. at 43.  On July 12, 2024, Commerce issued its draft results of redetermination pursuant to court remand.  See Draft Results of Redetermination Pursuant to Court Remand (July 12, 2024) ("Draft Remand Redetermination") (Remand PR 1).  In the Draft Remand Redetermination, in response to the Amended Remand Order, Commerce revised its finding of AFA with respect to Supermel and determined a new dumping margin for the company. Id. at 4-6.  On July 24, 2024, Defendant-Intervenors filed comments on Commerce's Draft Remand Redetermination.  See Petitioners' Comments on Commerce's Draft Remand Redetermination (July 24, 2024) ("Comments on Draft Remand Redetermination") (Remand CR 1) (Remand PR 3).  On August 26, 2024, Commerce issued its final results of redetermination pursuant to court remand.  Remand Redetermination (Remand PR 4) (ECF No. 41).

The Remand Redetermination summarily dismisses, largely without addressing, the arguments raised by Defendant-Intervenors and states that "Supermel's data is otherwise reliable and verifiable on the basis of other information available on the record." Id. at 9.  Commerce cites to the Preliminary Cost Calculation Memo ((CR 398) (PR 291)) and the Amended Remand Order at 20 and 41-42 (ECF No. 37), but does not explain what other information rendered the response otherwise reliable.  Commerce is not permitted to dismiss these arguments with such a broad waive of the hand and without explaining its reasoning.  Once Commerce found AFA was inapplicable, it was obligated to address each of the arguments raised in the case briefs and reiterated in Defendant-Intervenors' Comments on the Draft Remand Redetermination. Commerce's failure to address these arguments in the Remand Redetermination requires further remand as the agency's action cannot be sustained when the path of the agency's reasoning is not

NONCONFIDENTIAL

discernible.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

Commerce's Remand Redetermination ignored record evidence in the underlying investigation.  The record of the underlying investigation demonstrates that Commerce's application of total AFA to Supermel was warranted and is supported by substantial evidence. Furthermore, in its Remand Redetermination, Commerce failed to adequately explain its reasoning and failed to address relevant arguments raised by Defendant-Intervenors. Additionally, Commerce erred in finding that Supermel substantiated the claimed offset to its direct material costs.

A.    **Commerce's Application of AFA in Determining an Antidumping Margin for Supermel in its Final Determination is Supported by Substantial Evidence**

1.    **Commerce's Reliance on the Amended Remand Order Ignored Numerous Deficiencies in the Responses of Supermel and its Suppliers**

As an initial matter, in the Final Determination, Commerce accurately described the numerous deficiencies in the responses of Supermel and its suppliers.  Commerce found that total AFA was warranted as a result of "Supermel's failure to reconcile its unprocessed honey purchases and submit documentation tying its unprocessed honey purchases, the most significant component of the reported costs, to its accounting records."  IDM at 12 (PR 354).  Commerce explained that due to this failure, the agency was unable to determine whether Supermel's reported costs reasonably reflect the cost of producing honey.  Id.  The Court's Amended Remand Order did not address numerous deficiencies in the questionnaire responses of Supermel and its suppliers addressed below.

NONCONFIDENTIAL

a.     **Supermel Failed to Provide Accurate Sales Reconciliations**

When asked to provide a reconciliation of its reported sales with its financial statements, and to include supporting documentation, Supermel provided an exhibit containing a single worksheet in which it attempted to [

] See Supermel's Section B Questionnaire Response (July 27, 2021) ("BQR") at Exh. B-3 (CR 71-72) (PR 116-117).  This worksheet, however, was not accompanied by a narrative description of the attempted [                    ] and was not linked to or supported by any documentation.  Id.  In response to a request for additional information, Supermel failed to submit nearly all of the requested information including: (1) supporting documentation such as screenshots of sales subledgers to corroborate its Excel sales files; (2) reconciliation of the sales databases to Supermel's books and records; (3) explanation accompanied by supporting documentation for the significant discrepancies between Supermel's "Sales Listing," sales databases, and quantity and value chart; (4) supporting documentation to corroborate cancelled and omitted sales; (5) and a product list that identified in- and out-of-scope products.  Supermel's Sections A-C Supplemental Questionnaire Response (Oct. 6, 2021) ("First A-C SQR") at 15 (CR 270) (PR 224); Antidumping Duty Investigation of Raw Honey from Brazil: Supplemental Questionnaire (Sept. 13, 2021) at 5, 12 (CR 180) (PR 204).

In response to a third opportunity to provide this information, Supermel failed to provide a substantive response and instead simply stated that it "has already demonstrated that the submitted sales listings reconcile to the fiscal year financial statements as well as the trial balances for the POI."  Supermel's Second Sections A-C Supplemental Questionnaire Response (Nov. 8, 2021) ("Second A-C SQR") at 3 (CR 352) (PR 270).  Supermel provided much of the same information in its "Updated Sales Reconciliation" as it had done previously.  Compare

Second A-C SQR at Exh. 2SBC-2 (CR 353-375) (PR 271-272) <u>with</u> First A-C SQR at Exh. SUPB-4 (CR 244) (PR 225-226) <u>and</u> BQR at Exh. B-3 (CR 71-72) (PR 116-117).

The only additional information provided was a worksheet to its updated sales reconciliation "demonstrating that the reported sales databases are identical as the submitted sales listings." Second A-C SQR at 3 (CR 352) (PR 270). That worksheet is simply another worksheet created for the purpose of the underlying investigation and lacks any kind of supporting documentation. In fact, there is little other supporting documentation from Supermel's records maintained in the ordinary course of business in any version of Supermel's U.S. or third-country market sales reconciliations. <u>See</u> BQR at Exh. B-3 (CR 71-72) (PR 116-117); First A-C SQR at Exh. SUPB-4 (CR 244) (PR 225-226); Second A-C SQR at Exh. 2SBC-2 (CR 353-375) (PR 271-272). The only supporting documents provided by Supermel were limited screenshots of what it claimed to be its journal entries for purposes of a sales reconciliation, but those screenshots are incomplete. None of the screenshots identify [



] <u>See</u> Second A-C SQR at Exhs. 2SBC-3, 2SBC-4, 2SBC-5, 2SBC-6, 2SBC-7, 2SBC-8 (CR 353-375) (PR 271-272).

None of these deficiencies were addressed by the Court in the <u>Amended Remand Order</u>, and all of them were ignored by Commerce in the <u>Remand Redetermination</u> despite being raised by the domestic industry in comments on the draft.

NONCONFIDENTIAL

  **b.**  **Supermel Reported Incorrect Payment Dates, Gross Unit Prices, and Packing Expenses and Materials**

  Supermel failed to provide documentation supporting its claim that it reported the date of payment "as instructed" in Exhibits B-1 and C-1 for its sales.  <u>See</u> BQR at 17 (CR 71-72) (PR 116-117); Supermel's Section C Questionnaire Response (July 27, 2021) at 19 (CR 60) (PR 118).  Commerce noted discrepancies between the payment dates reported in Supermel's payment receipts and the payment dates reported in Supermel's Australian sales database.  <u>See</u> First A-C SQR at 20 (CR 270) (PR 224).  Supermel admitted that it did not report actual payment dates, claiming that it does not have the resources to review its own payment documents for sales databases that include over [  ] transactions for Australia and the United States. Second A-C SQR at 14 (CR 352) (PR 270).  Despite acknowledging that it maintains records of payment information, Supermel refused to report actual payment dates, arguing that this would be a burdensome task.  <u>Id.</u>  Supermel, however, [    ] payment receipts to review to accurately report the Australian payment dates, undermining any claim that the task was too burdensome.[3]  <u>Id.</u> at Exh. 2SBC-26.  Nonetheless, Supermel claimed that for its Australian sales, it has "already submitted all relevant proofs of payment . . . ." and that for its U.S. sales, it now submitted proof of payment for the period of investigation ("POI") sales in Exhibit 2SBC-26.

  Contrary to these claims, Supermel's payment documentation proves that the differences in reported sales dates are in fact material.  Not only are [  ] Supermel's reported third-country payment dates incorrect, but certain payment dates for both the U.S. and third-country markets are off by [    ], such that any calculation of credit expenses using

---

[3] Petitioners' Case Brief Regarding Supermel (Jan. 13, 2022) at 16 (CR 526) (PR 339) ("Petitioners' Case Brief") and CIT Response Brief at 31 (ECF No. 26).

NONCONFIDENTIAL

Supermel's reported payment dates will be inaccurate. See First A-C SQR at Exh. SUPB-10 (CR 262-263) (PR 225-226); Second A-C SQR at Exhs. 2SB-1, 2SC-1, 2SBC-26 (CR 353-375) (PR 271-272).[4]  For example, the payment for invoice [          ] recorded in Supermel's database is dated [               ] while the payment receipt is dated [              ] See First A-C SQR at Exh. SUPA2-2 (CR 270) (PR 224).  Similarly, the payment for invoice [            ] recorded in Supermel's database is dated [               ] whereas the payment receipt is dated [             ] Id. at Exh. SUPC-5.

The record also shows that Supermel reported incorrect prices for [          ] third country sales, leading to an overall [            ] of its Australian sales values.  When comparing Supermel's third country payment receipts to the third country sales prices reported in its sales database, it is evident that Supermel reported incorrect prices for at least the following invoices: [                   ] Compare First A-C SQR at Exhs. SUPB-1, SUPB-2 (CR 262-263) (PR 225-226) with id. at Exh. SUPB-10.  Based on the proofs of payment submitted by Supermel, it is clear that Supermel [           ] the gross unit price for these invoices.[5] Id.

Supermel's [          ] of its Australian sales prices resulted in the [              ] of its total Australian sales values.  Specifically, Supermel reported total Australian market sales of [

                                        ] as reported in Supermel's Australian sales database).  In contrast, Supermel's payment receipts for these sales demonstrate that its

---

[4]    Petitioners' Case Brief at 16, Comments on Draft Remand Redetermination at 17-18 (Remand CR 1) (Remand PR 3), and CIT Response Brief at 31.

[5]    Petitioners' Case Brief at 16-18 and Comments on Draft Remand Redetermination at 18-19.

NONCONFIDENTIAL

Australian sales actually totaled [                    ]  See First A-C SQR at Exh. SUPB-10 (CR

262-263) (PR 225-226).  The resulting difference of approximately [

] is not a minor deficiency.

Supermel also failed to accurately report its packing expenses.[6]  Specifically, Supermel

not only admitted to incorrectly reporting certain packing expenses, but also submitted certain

customs forms and packing lists that indicate that Supermel [


]  See Supermel's In Lieu of Verification Questionnaire Response (Dec.

20, 2021) ("VQR") at 1-2, 25-26 (CR 459) (PR 325).  As a result, Supermel's packing expenses

for the U.S. market appear to be artificially [        ] than the expenses actually incurred during

the POI.

Supermel also reported the use of incorrect packing materials.[7]  For example, Supermel

admitted that it reported inaccurate packaging for sale SEQT [    ]  Id.  Supermel explained that

it incorrectly reported the use of [                            ] in field PACKT for

this sale, rather than [        ] which is what was actually used.  Id.

Moreover, in its initial responses, Supermel reported that it used IBCs and drums for

packaging processed honey, and drums for transporting unprocessed honey to its processing

facility.  See First A-C SQR at 33-34, Exh. SUPB-7 (CR 247, 270) (PR 224-226).  In its

verification response, however, Supermel's U.S. invoices, customs forms, and bills of lading

pertaining to invoices [

---

[6]    Petitioners' Case Brief at 18-20 and Comments on Draft Remand Redetermination at 19-20.

[7]    Petitioners' Case Brief at 19 and Comments on Draft Remand Redetermination at 20.

NONCONFIDENTIAL

]  Compare VQR at Exhs. VE-7.4 (pdf pg. 764), VE-21 (pdf pg. 1079), VE-23 (pdf pg. 1105), VE-31 (pdf pg. 1331) (CR 472, 486-488, 506) (PR 327-331) with First A-C SQR at 33-34, Exh. SUPB-7 (CR 247, 270) (PR 224-226).  Supermel never reported use of [

]  in its packing expenses for U.S. sales.[8]

### c.    Supermel Failed to Provide Accurate Information Regarding its CONNUM Characteristics [                                    ]

Supermel misclassified [              ] sales of [                              ] honey and failed to corroborate its purported sales of organic honey, relevant certification expenses, and certain critical product characteristics.  See Petitioners' Case Brief Regarding Supermel (Jan. 13, 2022) at 20-22 (CR 526) (PR 339).[9]

### i.    Corroboration of Sales of [                              ] Honey and Certification Expenses

In its Australian sales database, Supermel identified [          ] sales of honey as [

]

See BQR at Exh. B-1 (CR 72) (PR 117); VQR at 26-27, Exhs. VE-26 – VE-30 (CR 459, 491-493, 504-505) (PR 325, 331).  Supermel's misclassification of honey is a serious deficiency that significantly impacts the CONNUM and, as a result, Commerce's calculation of an accurate dumping margin.  Additionally, because Supermel allocated the certification expense associated with specific sales to all sales, thereby eliminating price differences between certified and non-

---

[8]    Petitioners' Case Brief at 19 and Comments on Draft Remand Redetermination at 20.

[9]    Draft Remand Redetermination at 17-18.

NONCONFIDENTIAL

certified sales, its classification of honey as [          ] is unreliable.[10]   Commerce did not

address this in the Remand Redetermination.

### ii.     Corroboration of Certain CONNUM Characteristics – HOMGT/U, FILTERT/U, COLORT/U

Supermel failed to corroborate its product characteristic coding of homogenization levels

(HOMGT/U) and filtration levels (FILTERT/U).   Regarding homogenization and filtration

levels, Supermel submitted [

                                                                ]  Second A-C SQR at Exh.

2SBC-23 (CR 354) (PR 271).   Supermel did not tie this document to any production or sales

records, nor did it [

            ]  rendering the document entirely baseless.   Finally, Supermel [                    ]

misclassified its U.S. sales of [                                          ]  See, e.g., VQR at

Exhs. VE-28 - VE-34 (pdf pgs. 1254, 1286-88, 1319-21, 1337-42, 1357, 1377-82, 1394-99) (CR

493, 504-508, 514) (PR 331).   For example, Supermel [

            ]  Id.[11]

### d.     Supermel's Suppliers Withheld Cost of Production Information

### i.     Beekeeper 1

Beekeeper 1 claimed to have based its reported costs on "recollections" and "reasonable

assumptions."   See Section D Supplemental Questionnaire Response for [

---

[10]   Petitioners' Case Brief at 20-25 and Comments on Draft Remand Redetermination at 20-21.

[11]   Petitioners' Case Brief at 26-28 and Comments on Draft Remand Redetermination at 22.

NONCONFIDENTIAL

**]** (Oct. 26, 2021) ("Beekeeper 1 SQR") at 2-3 (CR 277) (PR 241).  It failed to submit specific examples or a narrative discussion of the "recollections" on which its costs were based. Id.  It also failed to clarify the "reasonable assumptions" upon which it relied to develop its costs and failed to identify whether it relied on any established standards or studies to develop its assumptions, explain how it developed its assumptions, and explain why it considered them to be reasonable.  See Letter from Commerce to Beekeeper 1 re: Less Than Fair Value Investigation of Raw Honey from Brazil (Oct. 14, 2021) at 4 (CR 273) (PR 230).  When asked to reconcile its reported total cost of production of R$ **[          ]** from the worksheet in Exhibit 1 of its initial response to the R$ **[          ]** figure reported in the table on page 3 of the same submission, Beekeeper 1 failed to do so.  Id. at 6.

When asked to reconcile its purchases of honey identified on its tax returns to its reported honey purchases, Beekeeper 1 stated that the beekeepers listed on its tax return are the same ones it obtained the purchased and resold honey from during the POI, and referred Commerce to Exhibit SUP-4 of its supplemental response.  See Section D Supplemental Questionnaire Response for **[          ]** (Oct. 26, 2021) at 5 (CR 277) (PR 241).  Exhibit SUP-4 merely reports **[          ]** and does not reconcile the **[          ]** to the figures reported in the tax returns for **[          ]**[12]

Beekeeper 1 withheld information necessary to determine POI costs.  Beekeeper 1's total annual expenses of R$ **[          ]** reported in its tax returns, covered the year 2020.  VQR at 20 (CR 459) (PR 325).  At no point did Beekeeper 1 submit its total POI costs on the record even though it is required to maintain **[          ]** under Brazilian tax law.  In

---

[12]    Petitioners' Case Brief at 35 and Comments on Draft Remand Redetermination at 23.

NONCONFIDENTIAL

its verification response, Beekeeper 1 informed Commerce *for the first time*, that its fiscal year ("FY") 2020 tax returns capture only half of the expenses.  Id. at 22.  Beekeeper 1, therefore, knowingly submitted understated costs by developing its costs on [                                    ] and did so without timely disclosing this fact to Commerce.[13]

When asked about its general and administrative ("G&A") and financial expenses, Beekeeper 1 reported that it did not incur any "significant" G&A and financial expenses. Beekeeper Questionnaire for [                                    ] (Sept. 9, 2021) ("Beekeeper 1 QR") at 18 (CR 174) (PR 198).  Beekeeper 1 claimed that as "a small company, we have no administrative or financial expenses, no employees or internal processes dedicated to these activities.  Because these are minor activities within our business, we do not keep record of time or resources spent in G&A work separate from other functions."  Beekeeper 1 SQR at 8 (CR 277) (PR 241).  Any operational business, even a small one, incurs certain G&A and financial expenses such as expenses for utilities, insurance, office supplies, etc.  Beekeeper 1 knowingly understated its costs.[14]

### ii.    Beekeeper 2

Beekeeper 2 failed to provide supporting documents (i.e., invoices, payment vouchers, receipts etc.) to corroborate the reported quantity and value of its sales of purchased honey despite acknowledging that it maintains them.[15]  Section D Supplemental Questionnaire Response for [                                    ] (Oct. 26, 2021) ("Beekeeper 2 SQR") at 7 (CR 278) (PR 242).  Beekeeper 2 also failed to explain and corroborate the "assumptions" it used to

---

[13]    Petitioners' Case Brief at 37 and Comments on Draft Remand Redetermination at 24.

[14]    Petitioners' Case Brief at 39-40 and Comments on Draft Remand Redetermination at 24.

[15]    Petitioners' Case Brief at 40-41 and Comments on Draft Remand Redetermination at 25-26.

NONCONFIDENTIAL

develop its costs.  Id.  The reported costs were estimates, or at best some approximation of standard costs, rather than actual costs based on actual records.

At no point did Beekeeper 2 submit its total costs, even though it maintains and is required to maintain **[                                          ]** under Brazilian tax law and, as such, could have determined the POI costs.  When asked to provide supporting documents (i.e., invoices, payment vouchers, receipts etc.) that corroborate the quantity and value it reported for its top five beekeepers, Beekeeper 2 responded that "the Brazilian regulation does not require us to issue official documents."  Beekeeper 2 SQR at 2 (CR 278) (PR 242).  In the same submission, Beekeeper 2 acknowledged that it does maintain records of these transactions, as it must report purchases of honey in its tax returns on a monthly basis.  Id. at 7.[16]

### e.  Supermel Incorrectly Claimed an Offset to DIRMAT

Under Brazilian law, manufacturers may receive a credit from the government for Program of Social Integration ("PIS") and the Contribution for the Financing of Social Security ("COFINS") taxes paid on material inputs used in the production of goods that are exported. Supermel's Section D Supplemental Questionnaire Response (Nov. 4, 2021) ("DSQR") at 14 (CR 330) (PR 265).  In the underlying investigation, Supermel claimed an offset to its direct materials costs as a result of purported PIS and COFINS taxes paid on purchases of raw materials.  First A-C SQR at 16 (CR 270) (PR 224).  Supermel, however, failed to substantiate its claimed offset.  According to Brazilian regulations, "a manufacturer can claim a tax credit equal to the amount of the PIS and COFINS paid on the raw materials," and this "input credit can be spread over time."  DSQR at 14 (CR 330) (PR 265).  Supermel reported that the prices of

---

[16]   Petitioners' Case Brief at 40-41 and Comments on Draft Remand Redetermination at 26-27.

**NONCONFIDENTIAL**

unprocessed honey reported in its honey purchase data are inclusive of PIS and COFINS taxes. First A-C SQR at 16 (CR 270) (PR 224). This statement does not withstand scrutiny.

First, an examination of the sample suppliers' invoices shows no evidence that Supermel [                                        ] For example, all invoices submitted by Beekeeper 1 and Beekeeper 2 report [                                        ] Beekeeper 1 SQR at Exh. SUP-1 (CR 277) (PR 241); Beekeeper 2 SQR at Exh. SUP-1 (CR 278) (PR 242). Further, other sample honey purchase invoices submitted by Supermel also show that it [                  ] Supermel's Section A-D Second Supplemental Questionnaire Response (Sept. 15, 2021) ("A-D SQR") at Exhs. SD-11, SD-13, SD-16 (CR 198-201) (PR 205).

Second, Supermel did not tie the offset value to its accounting books and records. In fact, the only line items in the POI trial balance related to PIS and COFINS are related to Apiário Producao and those accounts are [                ] DSQR at Exh. 2SD-5 (pdf pg. 43) (CR 331-332) (PR 266). Yet [                                                                                ] Id. at Exh. 2SD-9. Thus, there is no accounting confirmation that Supermel did pay PIS and COFINS taxes during the POI.

Third, while Supermel included the calculation of the offset value in its cost reconciliation worksheets, it did not report any corresponding trial balance account number for

NONCONFIDENTIAL

this offset or for field INPCRE.  Id. at Exhs. 2SD-2 (pdf pg. 37), 2SD-3 (pdf pg. 41).  Commerce should have denied this claimed adjustment.[17]

  **f.**  **The Responses of Supermel and its Beekeeper Suppliers to Commerce's Questionnaire in Lieu of Verification Were Deficient**

    **i.**  **Supermel Failed to Verify its Sales Information**

    Supermel failed to submit a complete sales reconciliation of its sales ledgers to its accounting system and failed to reconcile its sales expenses to its accounting system.  Supermel failed to provide any reconciliation for the per-unit freight, inventory carrying, and packing sales expenses.  VQR at 6 (CR 459) (PR 325).  Instead, Supermel simply stated that the supporting documents and expense reconciliations of the identified per-unit expenses for these sales were "explained in previous submissions."  Id.  Supermel also failed to submit any screenshots of the relevant sales expense accounts in its earlier submissions.  Supermel's submission of Excel worksheets, created solely for the investigation, that purportedly identify line items in its sub-ledgers are an insufficient bases on which to confirm any per-unit sales expense.  Moreover, because Supermel submitted screenshots of other accounts, such as its sales accounts, it is evident that Supermel had this capability and yet, simply refused to comply with Commerce's request.

    Supermel also failed to reconcile its sales ledger to its previously submitted sales reconciliation.  While Supermel did provide screenshots of its purported sales ledgers in their entirety in its verification response, it did so for the first time in the investigation.  The screenshots of Supermel's export sales ledger for the POI identified total export sales of

---

[17]  Petitioners' Case Brief at 47-49 and Comments on Draft Remand Redetermination at 27-28.

NONCONFIDENTIAL

[          ] kilograms ("kg") and R$[                    ] (id. at Exh. VE-11) while Supermel's previously reported sales reconciliation worksheets identified total export sales of [          ] kg and R$[            ].  First A-C SQR at Exh. SUPB-4 (CR 244) (PR 225-226); Second A-C SQR at Exh. 2SBC-3 (CR 353-375) (PR 271-272).  Supermel failed to identify or explain this discrepancy.

### ii.    Supermel Failed to Verify its Cost Information

As part of its cost verification, Commerce selected a sample month to test the accuracy of the reported consumption quantity and value of honey that was used by Supermel to develop the reported costs.  VQR at 13 (CR 459) (PR 325).  Commerce instructed Supermel to submit "copies of spreadsheets, handwritten journals and screen prints from your accounting system as support."  Id.  Supermel failed to provide the requested information.  Id. at 14, Exhs. VC-9 and VC-10.  Supermel stated that "{h}oney purchased for international sales is recorded as debit entries in the 'stock: raw materials' account (41) in Apiario Export's books," and "{h}oney purchased for domestic sales is recorded in entries in the 'stock: raw materials' account (41) in Apiario Producao's books."  A-D SQR at 3 (CR 198-201) (PR 205).  Thus, Supermel could and should have submitted the journal entries for account 41 for both Apiario Export and Apiario Producao.

Commerce asked Supermel to demonstrate how the unprocessed raw honey material consumption quantities and values for the largest volume purchases under CONNUM [          ], Beekeeper [                    ] and CONNUM [          ], Beekeeper [

] in the revised COP worksheet at Exhibit 2SD-9 of its second supplemental section D response tie to Supermel's inventory records, and was instructed to provide invoices, spread sheets, handwritten journals, and screen prints from its accounting system that support its

NONCONFIDENTIAL

demonstration.  Letter from Commerce to Supermel re: Request for Documentation (Dec. 10, 2021) at 5 (CR 403) (PR 299).  While Supermel explained that Exhibit 2SD-9 reflects "purchase quantities and values, not consumption quantities and values," (VQR at 14 (CR 459) (PR 325)) it did not provide the requested supporting documentation for the purchase quantities to demonstrate that claim.  Supermel also failed to submit the requested "screen prints from Supermel's accounting system that show how the purchase was recorded into inventory."  Id. at 15.

Despite being asked to "{d}emonstrate how the POI beginning (i.e., April 30, 2020) and ending (i.e., March 31, 2021) inventory values reflected on the inventory movement schedules at exhibit 2SD-14 of the 2SDQR tie to Apiario Diamante Comercial Exportadora Ltda's (Apiario Export.) and Apiario Diamante Producao's (Apiario Prod.) POI trial balances," Supermel failed to submit the required information.  Id. at 10.  Supermel also did not submit documentation in its verification response to support the values reported for Apiario Export and Apiario Producao's ending 2019 and beginning 2020 inventory values.

Commerce requested source documentation to confirm the ending inventory values as of April 30, 2020, and March 31, 2021.  Id.  Without source documentation for the quantity and the value of inventory at the end of 2019 and 2020 for both Apiario Export and Apiario Producao, Commerce was unable to verify the April 30, 2020, and March 31, 2021, ending inventory values.  Since these values are the cornerstone of Supermel's calculated honey inventory worksheet, the yield factor, consumption quantities, and ultimately the cost file data, Commerce should have found that Supermel failed verification of this data.

NONCONFIDENTIAL

      iii.      **Supermel's Suppliers Failed to Verify Their Cost Information**

      (a)      **Beekeeper 1**

Commerce instructed Beekeeper 1 to reconcile its annual and monthly costs and to ensure that its "reconciliation ties monthly costs sourced from the required accounting ledgers and source documents under Brazilian tax law to the annual costs" it reported. Beekeeper 1 explained that for FY 2020, it "reported the total annual expense of R$ **[        ]** in his tax return," and that the "monthly expenses are found in his tax return provided as Exhibit 2 (pdf pg. 36) to the initial beekeeper's questionnaire response dated September 9, 2021." VQR at 20 (CR 459) (PR 325). Beekeeper 1 failed to produce source documents for its "recollections and reasonable assumptions" and, consequently, to provide a cost reconciliation.

Beekeeper 1's only attempt at submitting a COP calculation was in its initial response. That calculation was based not on POI costs, but on FY 2020 costs. Beekeeper 1 QR at 17 (CR 174) (PR 198). The COP calculation starts with the 2020 tax costs and then adjusts the costs downward for "Cost of Honey Purchased and Sold in FY 2020, and Unrelated to Honey Production," and upward for "Costs Not Reported in Tax Return." Id. Beekeeper 1, however, failed to submit documentation to support or explain these values. Consequently, Commerce had no information as to what costs are included in "Cost of Honey Purchased and Sold in FY 2020, and Unrelated to Honey Production," and could not verify that these costs were unrelated to honey production.

When asked to demonstrate that Supermel's reported quarterly acquisition prices are higher than the actual cost of production incurred by its suppliers on a quarterly basis, Beekeeper 1 reported that "{b}ased on the worksheet at Exhibit 1 of the beekeeper's initial questionnaire

NONCONFIDENTIAL

response, the average per-unit COP for the honey produced by the beekeeper during the POI was R$ [    ]" VQR at 21 (CR 459) (PR 325). Instead of submitting its quarterly per-unit COP, however, the beekeeper submitted an average per-unit COP from its tax returns. Beekeeper 1 QR at Exh. 2 (CR 174) (PR 198).

### (b)    Beekeeper 2

When asked to reconcile its annual and monthly costs, its monthly costs to its accounting ledgers and source documents, and its accounting costs to its reported annual costs, Beekeeper 2 failed to do so. VQR at 21 (CR 459) (PR 325). Beekeeper 2's only attempt at submitting a COP calculation was in its initial response. The beekeeper explained that it prepared its COP using the information in the worksheet in Exhibit 1 of that response. Id. The COP calculation begins not with POI costs, but rather with 2020 costs. Beekeeper Questionnaire for [

] (Sept. 9, 2021) ("Beekeeper 2 QR") at 16 (CR 177) (PR 201); VQR at 20-21 (CR 459) (PR 325). Beekeeper 2's worksheet starts with the 2020 tax costs, adjusted downward for "Cost of Honey Purchased and Sold in FY 2020, and Unrelated to Honey Production," and adjusted upwards for "Costs Not Reported in Tax Return." Beekeeper 2 QR at 16-17 (CR 177) (PR 201). Beekeeper 2 failed to provide supporting documentation for the downward adjustment. Id. Consequently, Commerce could not confirm if these costs were properly eliminated from the Section D costs.

### 2.    The Respondent's Failure to Provide Requested Information Is the Relevant Inquiry

In its Amended Remand Order, the Court described the discrepancies between the quantities and values of unprocessed honey purchases reported by Supermel and its beekeeper suppliers as "insignificant in the context of the cost of production data Supermel provided" and

NONCONFIDENTIAL

stated that these discrepancies "could not have precluded verification of those data." Amended Remand Order at 15 (ECF No. 37). While the Court stated that these discrepancies affect only a small percentage of the total transactions between Supermel and its suppliers, the statutory inquiry is whether the respondent failed to provide information in its possession in the form and manner requested.

> The focus of {19 U.S.C. § 1677e(a)} is **respondent's failure to provide information**. The reason for the failure is of no moment. The mere failure of a respondent to furnish requested information — for any reason — requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination."

Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed. Cir. 2003) (emphasis in original) (information in braces added). The CIT has found AFA to be warranted when the respondent provided some information, but failed to provide other requested information. Taizhou United Imp. & Exp. Co. v. United States, 570 F. Supp. 3d 1358, 1364-65 (Ct. Int'l Trade 2022) ("{W}hile Plaintiffs highlight the information that GOC did provide in response to Commerce's requests, Plaintiffs' argument ignores the significant gap in the record left by the GOC's failure to act to the best of its ability to provide all the information requested by Commerce. Accordingly, the court sustains as reasonable Commerce's finding that the application of AFA was warranted . . ."), aff'd without op., 2023 WL 4446629 (Fed. Cir. July 11, 2023).

a.    **Deficiencies in Supermel's Response to Question 25 of the Second Supplemental Questionnaire**

The Amended Remand Order acknowledged that Supermel responded to only one of four segments of Question 25 of the Questionnaire in Lieu of Verification, but held that 19 U.S.C. § 1677m(d) required Commerce to send another deficiency letter to Supermel because this was the first time Supermel was notified that its response to Question 25 was deficient. Id. at 21.

NONCONFIDENTIAL

Defendant-Intervenors respectfully disagree.   Commerce first instructed Supermel to provide excerpts from its accounting system showing how it "recorded the purchases of the honey from the independent beekeepers, {and} the transfer of the unprocessed honey . . . (e.g., journal entries corroborating the purchases and transfer of the unprocessed honey, invoices etc.)."   Section D Supplemental Questionnaire (Sept. 1, 2021) at 4 (CR 173) (PR 195).   While the two questions were worded differently, they both requested journal entries and documentary evidence of quantities and values reported.   Question 25 met the requirement of § 1677m(d).   Hyundai Elec. & Energy Sys. Co. v. United States, 15 F.4th 1078, 1090 (Fed. Cir. 2021) ("'Borusan had already failed to provide the information requested in Commerce's original questionnaire, and the supplemental questionnaire notified Borusan of that defect. § 1677m(d) does not require more.'") (quoting Maverick Tube Corp. v. United States, 857 F.3d 1353, 1361 (Fed. Cir. 2017)).

Additionally, having asked this question at verification, Commerce was not obliged to ask the question again because Supermel failed to provide answers.   "Section 1677m(d) does not entitle {a respondent} to endless opportunities to cure deficiencies in its reporting."   Hyundai Heavy Indus. v. United States, 399 F. Supp. 3d 1305, 1311 (Ct. Int'l Trade 2019), aff'd without op., 2020 U.S. App. LEXIS 28,400 (Fed. Cir. 2020).   This is particularly true given that this question occurred at the verification.   Goodluck India Ltd. v. United States, 11 F.4th 1335, 1343-44 (Fed. Cir. 2021) ("The purpose of verification is 'to test information provided by a party for accuracy and completeness.'") (citing Micron Tech., Inc. v. United States, 117 F.3d 1386, 1396 (Fed. Cir. 1997) and quoting Bomont Indus. v. United States, 733 F. Supp. 1507, 1508 (Ct. Int'l Trade 1990)).   Commerce asked a clear question and Supermel failed to respond.   An adverse inference may be drawn "under circumstances in which it is reasonable for Commerce to

NONCONFIDENTIAL

expect that more forthcoming responses should have been made." Nippon Steel, 337 F.3d. at 1383.

Commerce nonetheless dropped its AFA finding based on the Court's instructions, finding the data provided by Supermel to be reliable and verifiable based on other record information, but without explaining what other information supported its finding. Its failure to provide any specific citation to such information in support of its determination renders its determination unsupported by substantial evidence. Commerce's action cannot be sustained when the path of the agency's reasoning is not discernible. See Bowman Transp., Inc., 419 U.S. at 286.

> **b.**   **Deficiencies in Supermel's Response to Question 3.a.iii of the First Supplemental Questionnaire**

In its Amended Remand Order, the Court stated that Supermel did respond to Commerce's request in question 3.a.iii of the first supplemental questionnaire for "excerpts" from Supermel's accounting system, but it provided this information in response to subpart a.i of question 3 and simply "did not write 'see response in previous subpart.'" Amended Remand Order at 27-28 (ECF No. 37). Subpart a.i of question 3, however, was not responsive to Commerce's request for actual excerpts from Supermel's accounting system. Supermel instead referenced in subpart 3.a.i. several exhibits included in its supplemental questionnaire response: (1) Exhibit SD-12, Exhibit SD-1a, Exhibit SD-1b, Exhibit SD-1c, and Exhibit SD-3. A-D SQR at Exhs. SD-1a, SD-1b, SD1-c. SD-3, and SD12 (CR 190-192, 194) (PR 205). These exhibits were created by Supermel solely for the purpose of the underlying investigation and were not documents from within Supermel's accounting system or its books and records. None of these exhibits contain journal entries, correspondence with beekeepers, invoices, payment

NONCONFIDENTIAL

documentation, or other source documentation that can corroborate Supermel's reported purchases.

**c.      Deficiencies in Supermel's Response to Question 18 of the First Supplemental Questionnaire**

In the <u>Amended Remand Order</u>, the Court concluded that Supermel reasonably demonstrated how its purchase database ties to its accounting system.  <u>Id.</u>  According to the Court, Supermel provided this information, which was requested in question 18.c of Commerce's first supplemental Section D questionnaire, in response to other questions in that questionnaire, specifically, questions 17, 3.a.i, and 3.a.iii.  <u>Id.</u> at 28-30.  Supermel did not provide this information in response to questions 18, 17, 3.a.i, or 3.a.iii.  As explained above, the information Supermel provided in response to question 3.a.i contains no source documents that tie to Supermel's accounting system.  Supermel's response to question 3.a.iii does not cite or reference any record evidence.  Supermel's response to question 17 also does not cite any record evidence. A-D SQR at 17 (CR 181) (PR 205).

**d.      Deficiencies in Supermel's Response to Questions 7.b and 10 of the Second Supplemental Questionnaire**

In the <u>Amended Remand Order</u>, the Court explained that Commerce identified Supermel's response to questions 7.b and 10 of the second supplemental questionnaire as part of its basis for applying AFA.  <u>Amended Remand Order</u> at 30-38 (ECF No. 37).  The Court disagrees with Commerce's finding that the screenshots of journal entries that Supermel submitted in its response do not reflect any accounting data.  The issue here is that Supermel did not provide excerpts from the "stock: raw materials (41)" account itself.  There is no proof that the information provided in exhibits 2SD-13a and 2SD-13b is what is recorded in Supermel's "stock: raw materials (41)."  <u>Teknik Aluminyum Sanayi A.S. v. United States</u>, Ct. No. 21-00251,

NONCONFIDENTIAL

Slip Op. 23-33 at 13-15, 2023 Ct. Intl. Trade LEXIS 36 (Mar. 16, 2023), at *12-14 ("'screenshots from {the company's} accounting systems . . . would allow us to confirm whether the reconciliations corroborated entries in Teknik's financial systems or financial statements' . . . and would have allowed Commerce 'to see the actual information as portrayed in Teknik's financial accounts and ledgers' . . . Commerce wanted the company to provide source documentation to substantiate the amounts reported in the questionnaire responses.' . . . The Department found, however, that Teknik's response to the verification questionnaire did not include the screenshots Commerce had requested and that the company had instead produced data in an alternative format that did not comply with instructions . . . The statute requires use of facts otherwise available when a party fails to provide information 'in the form and manner requested' . . . and it permits an adverse inference when a party fails to cooperate to the best of its ability. . . Teknik did not provide information in the form and manner requested, and its ready admission that it did not do so demonstrates failure to cooperate.  That is enough to sustain Commerce's findings."); Dalian Meisen Woodworking Co. v. United States, Ct. No. 20-00109, Slip Op. 23-60 at 10-11, 2023 Ct. Intl. Trade LEXIS 61, at *9-10 (Apr. 24, 2023) ("Meisen *admits it modified* what it calls its 'source documentation' — meaning, in turn, that it was no longer source documentation at all.  That is exactly why Commerce can insist on screenshots and other actual source documentation: The agency is entitled to (indeed, *needs to*) review something the respondent has not (and cannot have) modified.  'As the Federal Circuit has noted, Commerce is entitled to insist on the original records because "failure to submit primary source documentation" means that Commerce is "unable to verify the accuracy of the information submitted."'"(emphasis in original)  Hung Vuong Corp. v. United States, 483 F. Supp. 3d 1321, 1349, SLIP OP. 20-174, SLIP OP. 2020-174 (CIT 2020) (quoting Thyssen Stahl AG v. AK Steel

NONCONFIDENTIAL

Corp., No. 97-1509, 1998 U.S. App. LEXIS 17064, 1998 WL 455076, at *5 (Fed. Cir. July 27, 1998)).

      **e.**      **Deficiencies in Supermel's CONNUM-Specific Cost Reporting**

In the Amended Remand Order, the Court stated that "{b}ecause the Department's finding that Supermel 'failed to tie its purchases to its accounting system' is invalidated by the evidentiary record when viewed as a whole, so too is the finding that Commerce 'cannot rely on Supermel's purchase information as support for its CONNUM-specific costs.'" Amended Remand Order at 39 (ECF No. 37). As explained above, the Court's conclusion that Supermel did demonstrate how the purchase database ties to its accounting system is incorrect. Additionally, the Court ignored other deficiencies in Supermel's CONNUM reporting.

      **3.**      **In the Amended Remand Order, the Court Improperly Reweighed Factual Findings and Substituted its Judgment for That of Commerce**

In the Amended Remand Order, the Court stated that "{b}ased on its own examination of the questionnaire responses and included exhibits, the court concludes that these findings are not supported by substantial evidence on the record of the antidumping duty investigation." Amended Remand Order at 41 (ECF No. 37). Consequently, the Court remanded Commerce's Final Determination for reconsideration of the application of AFA to Supermel and directed Commerce to determine a new dumping margin for Supermel, in effect denying Commerce discretion to reconsider or further explain its rationale for application of AFA. The Court's role, however, is not to reweigh the evidence. Guangxi Jisheng Foods, Inc. v. United States, 37 CIT 1282, 1282-83 (2013) ("Substantial evidence requires '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence.' Therefore, the Court

asks whether Commerce adequately supported its conclusion, and not whether it would have reached the same conclusion upon independently reweighing the evidence.  In assessing the reasonableness of Commerce's conclusion, this Court affords broad deference to Commerce's expert findings. ('{F}actual determinations supporting anti-dumping margins are best left to the agency's expertise.')" (citations omitted); Walgreen Co. v. United States, 33 CIT 1620, 1626-28 (2009) ("The salient issue before the court is not whether the Department should have characterized the gift bag sets as compilations of subject and non-subject merchandise or mixed media sets; it is whether substantial evidence in the record supports the *Scope Ruling's* conclusion. . . .  Given the applicable standard of review, the court could not re-weigh this record evidence even if it so desired.") (citing e.g., FCC v. Fox Television Stations, Inc., 556 U.S. 502, 514 (2009) ("{A} court is not to substitute its judgment for that of the agency . . . ."), aff'd, 620 F.3d. 1350, 1354-44 (Fed. Cir. 2010)); Nucor Corp. v. United States, 612 F. Supp. 2d 1264, 1336-37 (Ct. Int'l Trade 2009) ("A court must tread lightly in administrative cases, taking care not to infringe on an agency's mandate and discretion by re-weighing facts and substituting its judgment for that of the agency. . . . that is particularly true where, as here, 'the issue is based on a 'factual determination' which requires agency expertise.'") (citation omitted); Polyethylene Retail Carrier Bag Comm. v. United States, 29 CIT 1418, 1421, 1433 (2005) ("The court may not reweigh the evidence or substitute its own judgment for that of the agency. . . . As a general rule, Commerce has the discretion and 'authority to determine the extent of investigation and information it needs.'  In this case, Commerce's conclusion was supported by substantial evidence in the record, and the court will not re-weigh the evidence.") (citations omitted).

Here, the Court directed Commerce to determine a new dumping margin for Supermel. Amended Remand Order at 44 (ECF No. 37).  As discussed above, many of the Court's findings

NONCONFIDENTIAL

regarding whether Commerce's AFA determination was unsupported by substantial evidence in effect explained why it was acceptable for Supermel to have failed to respond to Commerce with requested documentation. Those rulings directed what documentation Commerce needed or did not need from Supermel to reach a determination based on substantial evidence. That improperly substituted the Court in the role of Commerce as the expert finder of fact. Commerce decides what information it needs to reach a final determination. Foshan Shunde Yongjian Housewares & Hardware Co. v. United States, 35 CIT 1398, 1410 (2011) ("Commerce has some discretion to decide what information it needs to accurately calculate a respondent's dumping margin.") (citation omitted).

**B.** **In its Remand Redetermination, Commerce Failed to Adequately Explain its Reasoning and Failed to Address Arguments Raised by Defendant-Intervenors**

Equally concerning in this case is that Commerce simply accepted the Court's findings without providing any independent analysis or findings. In its Remand Redetermination, Commerce issued a decision consistent with the Court's findings in the Amended Remand Order, but failed to provide any analysis of its decision and also failed to address numerous arguments raised by Defendant-Intervenors in their brief submitted to the Court as well as in their comments submitted to Commerce on the agency's Draft Remand Redetermination. Instead, the agency merely substituted the Court's conclusions for its own and revised its decision on that basis alone.

Furthermore, Commerce did not conduct a new calculation to determine the appropriate dumping margin for Supermel, but instead reinstated the dumping margin calculated for the

NONCONFIDENTIAL

company in the <u>Amended Preliminary Determination</u>,[18] and, thus, failed to address Defendant-Intervenors' argument pertaining to Supermel's claimed offset to its direct material costs, raised in Defendant-Intervenors' administrative case brief filed with the agency, their brief filed with the Court, and their comments filed Commerce on the agency's <u>Draft Remand Redetermination</u>.

Commerce "is required to 'examine the record and articulate a satisfactory explanation for its action.'" <u>CS Wind Viet. Co. v. United States</u>, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (citation omitted); <u>Husteel Co. v. United States</u>, 491 F. Supp. 2d 1283, 1291 (Ct. Int'l Trade 2007) ("An agency's determination is not supported by substantial evidence where the agency fails to adequately explain the basis on which the agency made its decision.") (citation omitted); <u>Bowman Transp., Inc.</u>, 419 U.S. at 285-86 ("The agency must articulate a rational connection between the facts found and the choice made.") (internal quotation marks and citation omitted). "If Commerce fails 'to consider or discuss record evidence, which, on its face, provides significant support for an alternative conclusion{,} {the agency's determination} is unsupported by substantial evidence.'" <u>Jiaxing Brother Fastener Co. v. United States</u>, 428 F. Supp. 3d 1364, 1381 n.35 (2020) (citations omitted). While "Commerce's 'explanations do not have to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing court.'" <u>NMB Singapore Ltd. v. United States</u>, 557 F.3d 1316, 1319-20 (Fed. Cir. 2009) (citing <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)).

"{W}hen 'there is nothing in the administrative record showing that Commerce considered (much less addressed)' a party's explanation or argument relating to an issue

---

[18]    <u>See Raw Honey From Brazil: Amended Preliminary Determination of Sales at Less Than Fair Value</u>, 86 Fed. Reg. 71,614 (Dep't Commerce Dec. 17, 2021) ("<u>Amended Preliminary Determination</u>") (PR 313).

'essential to its analysis . . . the Court cannot sustain Commerce's decision.'" See Bonney Forge Corp. v. United States, 560 F. Supp. 3d 1303, 1310 (Ct. Int'l Trade 2022) (quoting Hung Vuong Corp. v. United States, 483 F. Supp. 3d 1321, 1367 (Ct. Int'l Trade 2020)). A case is properly remanded where the agency "fail{ed} to consider all relevant arguments" made by the parties. Altx, Inc. v. United States, 370 F.3d 1108, 1119-20 (Fed. Cir. 2004); see also Bonney Forge, 560 F. Supp. 3d at 1316 ("Record review requires a record. Because Commerce has failed to make one concerning its decision not to engage in verification, virtual or otherwise, its decision may not stand.").

Furthermore, Commerce is required to address all relevant arguments raised by interested parties. SKF USA, Inc. v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011) (Commerce has "an 'obligation' to address important factors raised by comments from petitioners and respondents"); Timken U.S. Corp. v. United States, 421 F.3d 1350, 1354 (Fed. Cir. 2005) (the "law does not require that an agency make an explicit response to every argument made by a party, but instead requires that issues material to the agency's determination be discussed so that the path of the agency may reasonably be discerned by a reviewing court") (citation omitted); Coalition of Am. Flange Producers v. United States, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination.") (citation omitted).

Here, Commerce failed in its obligation to adequately explain its decision not to apply AFA to Supermel and to instead calculate a dumping margin for the company. Commerce also failed in its obligation by ignoring the arguments raised in Defendant-Intervenors' administrative case brief filed in the underlying investigation, as well as in their case brief filed with the Court and their comments on the Draft Remand Redetermination. Commerce merely accepted the

NONCONFIDENTIAL

Court's conclusions, Supermel's severely deficient reporting, and issued a remand redetermination that contains no analysis of the issue or explanation of the agency's reasoning. Moreover, Commerce merely reinstated the dumping margin calculated in the <u>Amended Preliminary Determination</u>, once again failing to address any of Defendant-Intervenors' arguments raised in the underlying investigation or in the subsequent CIT appeal. For these reasons, the Court should find that "Commerce's conclusory treatment of this issue does not permit the court to review whether the agency met its obligation to make its decision based on the entire record. Commerce did not address information raised that may 'cast doubt on the reasonableness of a position taken by the agency.'" <u>Coalition of Am. Flange Producers</u>, 448 F. Supp. 3d at 1355 (citation omitted).

**C.    <u>In its Final Remand Redetermination, Commerce Erred in Finding That Supermel Substantiated the Claimed Offset to its Direct Material Costs</u>**

In the <u>Remand Redetermination</u>, Commerce explained that it continued to include Supermel's claimed offset to its direct material costs as a result of the input credit from the PIS and the COFINS because it was satisfied with Supermel's explanation of the offset and how it derived the offset reported in its cost database. <u>Remand Redetermination</u> at 10-11. Furthermore, Commerce stated that Supermel provided the Brazilian tax regulation that underpins the direct material input tax scheme and that because the agency did not request to Supermel specifically reconcile the offset value to its accounting records, Supermel was not required to do so. <u>Id.</u>

As explained in section III.A.1.e above, and as Commerce itself acknowledges in the <u>Remand Redetermination</u>, Supermel did not tie the claimed offset value to its accounting records. While Supermel did place the relevant regulations on the record of the underlying investigation, those regulations merely provide the manner in which a manufacturer can claim a

NONCONFIDENTIAL

tax credit equal to the amount of PIS and COFINS paid on the raw materials (i.e., [      ] of the total invoice value of the raw materials) and that this input credit can be spread over time. DSQR at 14 (CR 330) (PR 265).  Critically, Supermel did not provide evidence of the PIS and COFINS taxes it claims to have paid on its purchases of raw materials.  Instead, to calculate its claimed offset, Supermel [

                                          ]

        The fact that Commerce did not specifically request Supermel to reconcile the offset value to its accounting records does not mean that Supermel was not required to demonstrate that it actually received the offset.  It is the respondent's burden to populate the record with relevant information and to demonstrate that a claimed offset is warranted.  Am. Tubular Prods., LLC v. United States, 847 F.3d 1354, 1361 (Fed. Cir. 2017) ("Commerce did not err in declining to allow any scrap offset in this case.  Chengde did not establish the quantity of scrap generated from the production of OCTG during the period of review.  It simply failed to satisfy its evidentiary burden, and Commerce properly decided not to grant the requested offset."); Nan Ya Plastics Corp. v. United States, 810 F.3d 1333, 1337-38 (Fed. Cir. 2016) ("{T}he burden of creating an adequate record lies with interested parties and not with Commerce."); QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) (it is the respondent's burden to populate the record with all relevant information); 19 C.F.R. § 351.401(b)(1) ("The interested party that is in possession of the relevant information has the burden of establishing to the satisfaction of the Secretary the amount and nature of a particular adjustment.").

        Courts have sustained Commerce's denial of offsets when parties have failed to substantiate the claimed offset because the respondent bears the burden of establishing its entitlement to any favorable adjustment.  Jiangsu Senmao Bamboo & Wood Indus. Co. v. United

NONCONFIDENTIAL

States, 651 F. Supp. 3d 1348, 1368 (Ct. Int'l Trade 2023) (sustaining Commerce's denial of a by-product offset because the respondent failed to provide information to substantiate the offset); Allied Tube and Conduit Corp. v. United States, 132 F. Supp. 2d 1087, 1093 (Ct. Int'l Trade 2001) ("Commerce has reasonably placed the burden to establish entitlement to adjustments on {the respondent}, the party seeking the adjustment and the party with access to the necessary information.") (quoting Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1040 (Fed. Cir. 1996)). Even in instances where the respondent's records were maintained in accordance with the generally accepted accounting principles ("GAAP") of the exporting country, but the respondent could not tie the claimed offset to their books and records, courts have supported denial of such offsets. Dillinger France S.A. v. United States, 981 F.3d 1318, 1323-24 (Fed. Cir. 2020) (finding that Commerce erred in relying on a respondent's records that were kept in accordance with GAAP because the records were based on "likely selling price" rather than the cost of production…"); American Tubular Prods., LLC v. United States, 38 CIT 1413, 1429 (2014) (holding that "the agency did not need to grant the offset just because Chengde complied with {GAAP}" because, "{w}ith no data to tie scrap sales to scrap produced, Chengde's records did not reasonably reflect Chengde's scrap production.") (citing Hynix Semiconductor, Inc. v. United States, 424 F.3d 1363, 1369-70 (Fed. Cir. 2005)).

Here, there is no evidence in Supermel's books and records of the PIS and COFINS taxes it claims to have paid. There are also no sales invoices demonstrating that Supermel paid these taxes. The lack of evidence of PIS and COFINS taxes paid detracts from Supermel's claims to have received the offset based on Brazilian regulations that permit manufacturers to claim [        ] of the invoice value of purchases of raw materials. Uttam Galva Steels Ltd. v. United States, 476 F. Supp. 3d 1387, 1390 (Ct. Int'l Trade 2020) ("The court sustains Commerce's

NONCONFIDENTIAL

'determinations, findings, or conclusions' unless they are 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.' . . . More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.") (citations omitted). Supermel failed to satisfy the evidentiary burden for establishing an offset to its direct material costs, and the offset should be denied.

Respectfully submitted,

R. ALAN LUBERDA
ELIZABETH C. JOHNSON
MELISSA M. BREWER
MALIHA KHAN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007

Counsel to Defendant-Intervenors

**CERTIFICATE OF COMPLIANCE**
**WITH COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for Defendant Interveners, the American Honey Producers Association and the Sioux Honey Association, certifies that these comments in opposition to the remand redetermination of the U.S. Department of Commerce dated Aug. 26, 2024, issued in the appeal of Commerce's Final Determination in the less-than-fair-value investigation of Raw Honey from Brazil, contain 9,907 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft 365 – Enterprise.

Respectfully submitted,

/s/ R. Alan Luberda
R. ALAN LUBERDA
ELIZABETH C. JOHNSON
MELISSA M. BREWER
MALIHA KHAN
KELLEY DRYE & WARREN LLP
3050 K STREET, N.W., SUITE 400
Washington, D.C  20007
(202) 342-8400
aluberda@kelleydrye.com
ejohnson@kelleydrye.com
mbrewer@kelleydrye.com
mkhan@kelleydrye.com

Dated: September 25, 2024