**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| APIÁRIO DIAMANTE COMERCIAL EXPORTADORA LTDA and APIÁRIO DIAMANTE PRODUÇÃO E COMERCIAL DE MEL LTDA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN HONEY PRODUCERS ASSOCIATION and THE SIOUX HONEY ASSOCIATION, <br><br> Defendant-Intervenors. | Court No. 22-00185 |

**DEFENDANT'S COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by defendant-intervenors, American Honey Producers Association and Sioux Honey Association (collectively AHPA), AHPA Cmnts., ECF No. 44, and plaintiffs, Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda (collectively, Supermel), Supermel Cmnts., ECF No. 43, concerning the Department of Commerce's final results of redetermination filed in accordance with this Court's decision and remand order in *Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda. v. United States*, 705 F. Supp. 3d 1398 (Ct. Int'l Trade 2024), ECF No. 37. *See* Final

Results of Redetermination Pursuant to Court Remand, ECF No. 41, Aug. 26, 2024 (Remand Redetermination). Only AHPA contests Commerce's redetermination, *see* AHPA Cmnts., but as we explain below, the Court should sustain Commerce's remand redetermination because it complies with the remand order, is supported by substantial evidence, and otherwise in accordance with law.

## BACKGROUND

**I.     The Underlying Investigation**

The administrative determination under review is the final affirmative determination of Commerce's antidumping duty investigation covering raw honey from Brazil. *See Raw Honey from Brazil*, 87 Fed. Reg. 22,182 (Dep't of Commerce Apr. 14, 2022) (final LTFV determ.) (P.R. 353),[1] and the accompanying Issues and Decision Memorandum (IDM) (P.R. 354).

On November 17, 2021, Commerce published the preliminary results. *See* Preliminary Decision Memo at 2 (PDM) (P.R. 288). Commerce, in calculating the cost of production of honey, preliminarily found that Supermel was not the producer of the subject merchandise, because it purchased raw honey and performed minimal processing on the subject merchandise at the time of purchase. *See id.* at 16-17. Commerce also preliminarily found that the raw honey, as purchased from the beekeepers, met the "essential characteristics" of the product and was already within scope prior to the "minimal" processing done by the exporter-respondents. *Id.* As a result, Commerce preliminarily relied on Supermel's acquisition costs to calculate the cost of production. *Id.* at 17. To determine whether the acquisition costs of Supermel were reasonable to use as a "proxy for the actual {cost of production} of the raw honey purchase," Commerce

---

[1] Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of the antidumping duty investigation.

"selected the two direct beekeeper suppliers with the lowest sales prices to Supermel." *Id.* After comparing the results, Commerce preliminarily relied on Supermel's reported acquisition costs without adjustment. *Id.*

In the final determination, Commerce explained that after reviewing the parties' comments and reexamining the record, Supermel's margin should be recalculated using facts available with an adverse inference. *See* IDM at 4. Specifically, Commerce determined that (1) Supermel failed to cooperate by not acting to the best of its ability in responding to Commerce's request to submit documentation supporting how its honey purchases related to its accounting records, and (2) upon examining records during verification, Supermel had multiple discrepancies between its purchases as reported when compared with the records of the beekeeper-producers. *Id*. at 12.

Therefore, Commerce determined that due to the "unexplained and unreconciled differences between the information submitted by Supermel and its beekeeper suppliers as well as the lack of corroborating evidence that tie Supermel's reported purchases to its accounting system," it was necessary to apply facts available. *Id.* at 18. Commerce also determined that it was appropriate to apply an adverse inference because, despite multiple opportunities, Supermel failed "to provide documentation tying its honey purchases (*i.e.*, the basis for its reported costs) to its accounting records and system." *Id.* at 19. Commerce corroborated the 83.72 percent margin alleged in the petition and used that as the facts available with an adverse inference rate. *Id.* at 20.

## II. The Court's Remand Order

In June 2024, the Court remanded Commerce's determination for further consideration. *See generally Apiário*. Primarily, the Court held that substantial evidence did not support

Commerce's application of facts available pursuant to 19 U.S.C. § 1677e. *Id.* at 1406-18. Likewise, the Court rejected Commerce's determination that an adverse inference was warranted because Commerce's findings that Supermel withheld information, impeded the investigation, and provided cost-of-production data that could not be verified were not supported by substantial evidence. *Id.*

First, the Court held that Commerce inappropriately relied on differences between the information submitted by Supermel and its two largest beekeeper suppliers because the "discrepancies were insignificant in the context of the cost of production data Supermel provided and, therefore, could not have precluded verification of those data." *Id.* at 1407. The discrepancies were also undermined by other record evidence which supported the two largest beekeepers devoting their labor almost entirely to production activities, with virtually no time spent on the disputed administrative activities. *Id.*

The Court then meticulously examined various questionnaire responses from Supermel and held that substantial evidence did not support Commerce's determination that the responses were deficient. *See id.* at 1409-17. Moreover, Commerce had "failed to provide an opportunity to remedy or explain those deficiencies, as required by 19 U.S.C. § 1677m(d)." *Id.* at 1409. For example, for Question 25 of the Second Supplemental Questionnaire, the Court held that Commerce failed to bring the alleged deficiency to Supermel's attention until the final determination, contrary to what Section 1677m(d) requires, which is to give the "submitter actual notice of the deficiency or reiterate{} the initial request." *Id.* at 1410-11. The Court largely found the same issues with Commerce's criticism of Supermel's responses to Question 18 of the First Supplemental Questionnaire, and Questions 7(b) and 10 of the Second Supplemental Questionnaire. *Id.* at 1413-17. As the Court explained, Commerce's findings that Supermel's

4

screenshots of journal entries were deficient or unresponsive "appears to have developed at some point after it issued the In Lieu of Verification Questionnaire but before" the publication of the final determination. *Id.* at 1416. Further, it was reasonable for Supermel to presume "that its journal entry screenshots, coupled with its descriptions of how those entries were recorded into a specific cost account within its accounting records, were responsive" to Commerce's "request for journal entries or demonstrations of how the purchase data they reflect 'tie' to their accounting records." *Id.* at 1416. Relatedly, the Court held that Commerce's finding that Supermel failed to tie its purchases to its accounting system by CONNUM (or control number), was similarly "invalidated by the evidentiary record when viewed as a whole{.}" *Id.* at 1418.

In summary, the Court held that "the principal information that Commerce found Supermel to have withheld was provided in full by the complete set of journal entries for raw honey purchases from the beekeepers and the related responses disclosing the placement of all of the recorded costs{.}" *Id.* at 1419. Thus, without record support for applying facts available, the Court held that Commerce's "ancillary findings" that Supermel impeded the proceeding also lacked evidentiary support. *Id.*

The Court ordered Commerce on remand to reconsider the application of facts available, 19 U.S.C. § 1677e, to Supermel "*based on the existing record*{.}" *Id.* at 1420 (emphasis added).

### III.     Commerce's Remand Redetermination

Pursuant to the remand order, Commerce reconsidered the application of facts otherwise available and determined that record evidence did not support such a finding. *See* Remand Redetermination at 6-11; *Apiário*, 705 F. Supp. 3d at 1420. As Commerce explained in the remand redetermination and consistent with the Court's order, Commerce determined "that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data, based on other reliable and verifiable evidence on the record."

5

Remand Redetermination at 6. Commerce "concluded that the data are otherwise reliable and verifiable on the basis of other information available on the record." *Id.* Therefore, Commerce determined that facts otherwise available, whether with a neutral or adverse inference, was not warranted. *Id.* at 9. Commerce also explained that "the rate assigned to Supermel in this remand determination for cash deposit purposes" would soon be irrelevant because "forthcoming events" would overtake the cash deposit with the publication of the final results of the first administrative review setting the liquidation rate for that period of review. *Id.*

Further, although AHPA continued to challenge Commerce's offset to Supermel's direct material costs with respect to the input credit from the Program of Social Integration (PIS) and the Contribution for the Financing of Social Security (COFINs), Commerce continued to include the offset because Commerce determined that Supermel had "explained and demonstrated how it derived the offset reports in its cost database." *Id.* at 10. Commerce rejected AHPA's argument that Supermel should "specifically reconcile the offset value to its accounting records" because Commerce had not requested that Supermel do so in the initial or supplemental questionnaires. *Id.*; *see also id.* at 11 (observing that Supermel did not have a separate account for PIFS/COFINs offset or tax credits in its normal books and records).

Thus, Commerce calculated a new weighted-average dumping margin of 10.52 percent for Apiário, and an all-others rate of 9.38 percent. *Id.* at 12.

## ARGUMENT

### I. Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States,* 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

## II. AHPA's Arguments Challenge The Court's Remand Order And Do Not Undermine Commerce's Remand Redetermination

The Court ordered Commerce on remand to reconsider whether to apply facts available "based on the existing record." *Apiário*, 705 F. Supp. 3d at 1420. As explained below, Commerce complied with the remand order and AHPA's arguments to the contrary are without merit.

To begin, the bulk of AHPA's brief challenges the Court's remand order, with AHPA arguing that Commerce should again apply facts available with an adverse inference to Supermel, AHPA Cmnts. at 4-27, despite the Court expressly stating that Commerce's remand results must be "based on the existing record." *Apiário*, 705 F. Supp. 3d at 1420. "Such arguments essentially ask, once again, for a re-weighing of the evidence, and they have already been considered unpersuasive or rejected." *Juancheng Kangtai Chemical Co., Ltd. v. United States*, No. 14-00056, Slip Op. 17-3, 2017 WL 218910, at *7 (Ct. Int'l Trade Jan. 19, 2017). Indeed, AHPA essentially complains that this Court's remand order "simply got it wrong," *Mattel, Inc. v. United States*, 346 F. Supp. 2d 1295, 1307 (Ct. Int'l Trade 2004), but Commerce explains in the remand redetermination that "Supermel's data is otherwise reliable and verifiable on the basis of other information available on the record" and agreed that facts available with an adverse inference "is not warranted in this case." Remand Redetermination at 9.

Relatedly, AHPA argues that the Court improperly re-weighed factual findings and substituted its judgment for that of Commerce, AHPA Cmnts. at 26-28, but that is *not* what the Court did. Rather, the Court extensively explained that substantial evidence did not support Commerce's determination that Supermel's various questionnaire responses were deficient, *see Apiário*, 705 F. Supp. 3d at 1409-17, and in the remand redetermination, Commerce agreed. To

7

wit, "{c}onsistent with the Court's holding, Commerce is determining on remand that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data."  Remand Redetermination at 8.  AHPA merely disagrees with the Court, and now Commerce, that there is not substantial evidence to support Commerce applying facts available with an adverse inference to Supermel's data, but that does not undermine Commerce's determination.  *See id.*; *Apiário*, 705 F. Supp. 3d at 1409-17; *cf. Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018) ("mere disagreement" with Commerce's weighing of evidence insufficient basis for challenge).

      Second, AHPA argues that Commerce failed to adequately explain its reasoning and "failed in its obligation to adequately explain its decision not to apply {adverse facts available} to Supermel and to instead calculate a dumping margin for the company."  AHPA Cmnts. at 30.  Although "agencies generally have a duty to address significant arguments and evidence which seriously undermine its reasoning and conclusions," *DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340, 1355 (Ct. Int'l Trade 2020), Commerce "does not need to address every piece of evidence presented by the parties."  *Siemens Energy, Inc. v. United States*, 992 F. Supp. 2d 1315, 1324 (Ct. Int'l Trade 2014), *aff'd*, 806 F.3d 1367 (Fed. Cir. 2015).  AHPA is also vague as to the "numerous arguments" that Commerce allegedly failed to address, AHPA Cmnts. at 28, and so the Court should reject this unsupported complaint.

      Finally, AHPA argues that Commerce erred in finding that Supermel substantiated the claimed offset to its direct material costs and "there is no evidence in Supermel's books and records of the PIS and COFINS taxes it claims to have paid."  *Id.* at 31-33.  This is incorrect.  As Commerce explained in the remand redetermination, in response to a supplemental questionnaire, Supermel "explained and demonstrated how it derived the offset reported in its

8

cost database." Remand Redetermination at 10. The Brazilian tax regulation that "underpins the direct material input tax scheme" was also on the record and "Supermel further explained in a Section D supplemental questionnaire response that under the Brazilian PIS/COFINS tax system, a credit is received from the government for PIS/COFINS taxes paid on material inputs used in the production of goods that are exported." *Id.* (citing Supermel's Section D Second Supplemental Questionnaire Response at 14) (PR 265, CR 330). Commerce explained that it never specifically asked Supermel to "reconcile the offset value to its accounting records," and, thus, it rejected AHPA's argument that Supermel should have reconciled and tied the offset value to its accounting records. *Id.* at 10-11. Also, Commerce accepted Supermel's reasonable explanation that the amount of PIS/COFINS taxes paid is "embedded" in the actual amount paid, and is not a separate line item, which is why "Supermel in its normal books and records does not have a separate account for PIS/COFINS offset or tax credits." *Id.* at 11. Thus, substantial evidence supports Commerce's determination to continue to include the offset to Supermel's direct material costs. *Id.* at 10-11; *see also MacLean-Fogg*, 100 F. Supp. 3d at 1355.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

| | |
|---|---|
| OF COUNSEL: | /s/ Kara M. Westercamp |
| | KARA M. WESTERCAMP |
| Benjamin Juvelier | Senior Trial Counsel |
| Attorney | Commercial Litigation Branch |
| Office of the Chief Counsel | Civil Division |
| For Trade Enforcement & Compliance | U.S. Department of Justice |
| U.S. Department of Commerce | P.O. Box 480, |
| | Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Phone: (202) 305-7571 |
| | Email: Kara.M.Westercamp@usdoj.gov |

Dated: October 18, 2024

CERTIFICATE OF COMPLIANCE

    I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 2,383 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

                                      s/ Kara M. Westercamp
                                    KARA M. WESTERCAMP
                                       Senior Trial Counsel

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| APIÁRIO DIAMANTE COMERCIAL EXPORTADORA LTDA and APIÁRIO DIAMANTE PRODUÇÃO E COMERCIAL DE MEL LTDA, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN HONEY PRODUCERS ASSOCIATION and THE SIOUX HONEY ASSOCIATION, <br><br> Defendant-Intervenors. | Court No. 22-00185 |

## **ORDER**

Upon consideration of plaintiffs' and defendant-intervenor's comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained in its entirety.

Dated: _____, 2024      _____
New York, New York                                   SENIOR JUDGE