Slip Op. 25-10

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| APIÁRIO DIAMANE COMERCIAL EXPORTADORA LTDA AND APIÁRIO DIAMANTE PRODUÇÃO E COMERCIAL DE MEL LTDA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>AMERICAN HONEY PRODUCERS ASSOCIATION AND THE SIOUX HONEY ASSOCIATION,<br><br>Defendant-Intervenors. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 22-00185 |

OPINION

[Sustaining an agency decision submitted in response to court order in an action contesting a final determination concluding an antidumping duty investigation]

Dated: January 24, 2025

*Pierce J. Lee*, Crowell & Moring LLP, of Washington, D.C., for plaintiffs Apiário Diamante Comercial Exportadora Ltda and Apiário Diamante Produção e Comercial de Mel Ltda. With him on the brief was *Daniel J. Cannistra*.

*Kara M. Westercamp*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia*

*M. McCarthy*, Director, *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel on the brief was *Benjamin Juvelier*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*R. Alan Luberda,* Kelley Drye & Warren LLP, of Washington, D.C., for defendant-intervenors American Honey Producers Association and the Sioux Honey Association.  With him on the brief were *Elizabeth C. Johnson*, *Melissa M. Brewer*, and *Maliha Khan*.

Stanceu, Judge:  Plaintiffs Apiário Diamante Comercial Exportadora Ltda ("Apiário Export") and Apiário Diamante Produção e Comercial de Mel Ltda ("Apiário Produção") (collectively, "Apiário," operating jointly under the trade name "Supermel") contested an affirmative "less-than-fair-value" determination ("Final Determination") that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude an antidumping duty investigation on imported raw honey from several countries.  *Raw Honey From Brazil: Final Determination of Sales at Less Than Fair Value*, 87 Fed. Reg. 22,182 (Int'l Trade Admin. Apr. 14, 2022), P.R. 358, ECF No. 31-2 ("*Final Determination*").[1]  The court previously ordered Commerce to reconsider its Final Determination.  *Apiário Diamante Comercial Exportadora Ltda. v. United States*, 48 CIT __, __, 705 F. Supp. 3d 1398, 1420 (2024) ("*Apiário I*").

---

[1] Citations to documents from the Joint Appendix (Apr. 18, 2023), ECF Nos. 30 (conf.), 31 (public) (supplemented by ECF Nos. 33 (conf.), 34 (public), filed on Nov. 16, 2023) are referenced herein as "P.R. __" for public versions.  Citations to documents from the Remand Joint Appendix (Nov. 1, 2024), ECF Nos. 51 (conf.), 52 (public), are referenced herein as "P.R.R. __" for public versions.

Case 1:22-cv-00185-TCS    Document 53    Filed 01/24/25    Page 3 of 17

Court No. 22-00185                                                                                          Page 3

Before the court is the Department's "Remand Redetermination," issued in response to the court's opinion and order in *Apiário I*. Final Results of Redetermination Pursuant to Court Remand (Int'l Trade Admin. Aug. 26, 2024), ECF No. 41-1 ("*Remand Redetermination*").

The court sustains the Remand Redetermination.

## I. BACKGROUND

Background for this case is presented in the court's prior opinion and is supplemented herein. *Apiário I*, 48 CIT at __, 705 F. Supp. 3d at 1401–02.

### A. The Contested Decision

On November 23, 2021, Commerce issued a "Preliminary Determination" after its antidumping investigation of raw honey from Brazil for the time period (the "period of investigation" or "POI") of April 1, 2020 through March 31, 2021, in which it assigned a 29.61% estimated dumping margin to Supermel and a 20.19% dumping margin to all other exporters and producers. *Raw Honey From Brazil: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 86 Fed. Reg. 66,533, 66,533–34 (Int'l Trade Admin. Nov. 23, 2021), P.R. 292, ECF No. 31-31 ("*Preliminary Determination*"); *Decision Memorandum for the Preliminary Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Brazil* 17, 21 (Int'l Trade Admin. Nov. 17, 2021), P.R. 288, ECF No. 31-30 ("*Prelim. I&D Mem.*"). On December 17, 2021, having corrected ministerial errors in the

Preliminary Determination pursuant to 19 C.F.R. § 351.224(f), Commerce issued an "Amended Preliminary Determination," in which it assigned a 10.52% estimated dumping margin to Supermel and a 9.38% estimated dumping margin to all other exporters and producers. *Raw Honey From Brazil: Amended Preliminary Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 71,614, 71,615 (Int'l Trade Admin. Dec. 17, 2021), P.R. 313, ECF No. 31-34 ("*Amended Preliminary Determination*").

On April 14, 2022, Commerce issued the Final Determination, which incorporated by reference a "Final Issues and Decision Memorandum." *Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Brazil* (Int'l Trade Admin. Apr. 7, 2022), P.R. 354, ECF No. 31-3 ("*Final I&D Mem.*"). In the Final Determination, Commerce assigned Supermel an estimated dumping margin of 83.72% *ad valorem* by invoking "facts otherwise available" under Section 776(a) of the Tariff Act of 1930, *as amended* ("Tariff Act"), 19 U.S.C. § 1677e(a), and an "adverse inference" under Section 776(b) of the Tariff Act, 19 U.S.C. § 1677e(b), provisions to which Commerce often refers in the aggregate as "adverse facts available" or "AFA." *Final Determination*, 87 Fed. Reg. at 22,182–83.[2] Commerce found that Supermel "significantly impeded the proceeding by not substantiating" the reported cost of production of raw honey and therefore applied

---

[2] Citations to the U.S. Code herein are to the 2018 edition. Citations to the Code of Federal Regulations herein are to the 2022 edition.

"total AFA" to assign the 83.72% rate to Supermel. *Final I&D Mem.* 12, 18–20.

Following an affirmative injury determination by the U.S. International Trade

Commission, Commerce issued an antidumping duty order on raw honey from

Argentina, Brazil, India, and the Socialist Republic of Vietnam (the "Order"). *Raw

Honey From Argentina, Brazil, India, and the Socialist Republic of Vietnam: Antidumping

Duty Orders*, 87 Fed. Reg. 35,501 (Int'l Trade Admin. June 10, 2022), P.R. 362, ECF No.

31-1.

### B. The Court's Prior Opinion and Order

In *Apiário I*, the court held that the Department's total application of facts

otherwise available with an adverse inference "was based on multiple findings of fact

for which the record does not contain substantial evidence" and remanded the Final

Determination to Commerce for a "redetermination . . . that reconsiders, based on the

existing record, the Department's determination on the application of 19 U.S.C. § 1677e

to Supermel; that determines a new estimated dumping margin for Supermel; and that

is in accordance with this Amended Opinion and Order."  48 CIT at __, 705 F. Supp. 3d

at 1420.

Commerce based its total application of facts otherwise available and an adverse

inference on several factual findings, each of which the court found to be unsupported

by substantial record evidence.  Commerce set aside Supermel's entire cost of

production and comparison market databases as unverifiable, based on its findings that

Supermel provided insufficient responses regarding its purchases of raw honey from its beekeeper suppliers, that Supermel did not provide sufficient documentation supporting its purchase database, and that Supermel did not demonstrate how its purchase database "tied" to its accounting system. *Id.*, 48 CIT at __, 705 F. Supp. 3d at 1406–19. The court held these findings to be unsupported on the record considered as a whole, as the record either rendered insignificant the purported deficiencies Commerce identified or contradicted them altogether. *Id.* The court further found that Commerce failed to bring certain deficiencies to Supermel's attention and provide Supermel an opportunity to remedy them, as required by 19 U.S.C. § 1677m(d). *Id.*, 48 CIT at __, 705 F. Supp. 3d at 1409–11.

While granting relief in the form of ordering a remand of the Final Determination, the court denied relief on plaintiffs' claim that Commerce "acted unlawfully" when, in its "Preliminary Issues & Decision Memorandum," *Prelim. I&D Mem.* 18, it contemplated applying adverse inferences in future administrative reviews if it did not receive accurate, verifiable cost information. Concluding that the claim was not based on a present injury in fact and sought what would be an advisory opinion, the court denied relief. *Id.*, 48 CIT at __, 705 F. Supp. 3d at 1419–20.

### C. Submission of the Remand Redetermination and Comments

In response to the court's opinion and order in *Apiário I*, Commerce submitted the Remand Redetermination to the court on August 26, 2024. Plaintiffs commented in

favor of the Remand Redetermination on September 24, 2024. Pls.' Comments on Remand Results (Sept. 24, 2024), ECF No. 43. Defendant-intervenors, the American Honey Producers Association and the Sioux Honey Association, commented in opposition on September 25, 2024. Def.-Int.'s Comments in Opp. to the Commerce Dep't's Remand Redetermination (Sept. 25, 2024), ECF Nos. 46 (conf.), 47 (public) ("AHPA Comments"). The government filed its response on October 18, 2024, requesting "that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States." Def.'s Comments in Support of Remand Redetermination 9 (Oct. 18, 2024), ECF No. 50.

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting a final determination that Commerce issues to conclude an antidumping duty investigation.

In reviewing an agency determination, including one made upon remand to the agency, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence refers to

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. of New York v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)).

**B.  Use of Facts Otherwise Available and Adverse Inferences under 19 U.S.C. § 1677e**

When "an interested party or any other person" withholds requested information, 19 U.S.C. § 1677e(a)(2)(A), or "significantly impedes a proceeding," *id.* § 1677e(a)(2)(C), or when the information offered "cannot be verified as provided in section 1677m(i) of this title [19 U.S.C. § 1677m(i)]," *id.* § 1677e(a)(2)(D), Commerce resorts to facts otherwise available.  If Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b)(1)(A).

**C.  The Remand Redetermination**

In the Remand Redetermination, Commerce reported that it "reanalyzed Supermel's honey acquisition costs" and "determined on remand that the complete reconciliation of Supermel's data to its suppliers' reported data is immaterial to the analysis of Supermel's data, based on other reliable and verifiable evidence on the record." *Remand Redetermination* 6.  Rejecting defendant-intervenors' arguments that Commerce should continue applying adverse facts available and should deny a claimed offset to Supermel's direct material costs from two tax credits, Commerce adopted the

10.52% preliminary estimated weighted-average dumping margin calculated for Supermel in the Amended Preliminary Determination. *Id.* at 6–12. Commerce assigned a 9.38% estimated weighted-average dumping margin to all other respondents. *Id.* at 12.

### D.  The First Administrative Review

In the Remand Redetermination, Commerce noted that "the rate assigned to Supermel in this remand determination for cash deposit purposes will soon be overtaken by" the "forthcoming" final results of the first administrative review of the Order covering the subject merchandise, which "will set the liquidation rate for that period of review and a new cash deposit rate" that "will supersede any cash deposit rate set by this remand determination." *Id.* Defendant-intervenors do not contest this statement.

Commerce initiated an administrative review of the Order on August 3, 2023, in accordance with section 751(a) of the Tariff Act, 19 U.S.C. § 1675(a), and 19 C.F.R. §§ 351.213, 351.221. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 51,271, 51,273 (Int'l Trade Admin. Aug. 3, 2023). Commerce selected two mandatory respondents for individual examination, Apis Nativa Agroindustrial Exportadora Ltda. ("Apis Nativa") and Melbras Importadora E Exportadora Agroindustrial Ltda. ("Melbras"), and published its "Preliminary Results" on July 5, 2024. *Raw Honey From Brazil: Preliminary Results and Partial Rescission of*

*Antidumping Duty Administrative Review; 2021–2023*, 89 Fed. Reg. 55,582, 55,582 (Int'l Trade Admin. July 5, 2024).  Commerce preliminarily assigned the following weighted-average dumping margins for the period of review November 23, 2021 through May 31, 2023: Apis, 0%; Melbras, 2.31%; all non-examined companies (including Supermel), 2.31%.  *Id.* at 55,582–84.

The court agrees with Commerce that the final dumping margin assigned to Supermel in the first administrative review will supplant the estimated cash deposit rate determined in the Remand Redetermination.  Once that occurs, defendant-intervenors' claims contesting the cash deposit rate assigned to Supermel in the Remand Redetermination will become moot.  *See Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995).

### E.  Defendant-Intervenors' Objections to the Remand Redetermination

Defendant-intervenors raise five claims in contesting the Remand Redetermination.  First, they contend that the court applied the incorrect standard in *Apiário I* when reviewing the Department's findings on facts otherwise available and an adverse inference.  AHPA Comments 20–21, 26.  Second, in a related argument, they argue that the Department's use of "total AFA" in the Final Determination was supported by substantial evidence.  *Id.* at 11–14, 16–17, 20–26.  Third, they allege that what they view as additional deficiencies in Supermel's questionnaire responses during the investigation compel Commerce to apply total adverse facts available.  *Id.* at 5–11,

16–18. Fourth, they claim that a tax offset to Supermel's direct material costs is not sufficiently supported by documentation on the record. *Id.* at 31–34. Finally, they claim that Commerce did not explain adequately its reasoning for its Remand Redetermination and that Commerce did not address their arguments before the court in *Apiário I* and in their comments on the draft remand redetermination. *Id.* at 28–31.

The court rejects each of these arguments. The first two arguments—that the court previously applied an incorrect standard and that the use of total AFA was supported by the record of the investigation—are improper attempts to relitigate issues already litigated and decided in *Apiário I*. The proper way to raise these issues was through the filing of a motion for reconsideration under USCIT Rule 60(b), which provides for relief from an "order[] or proceeding" for reasons that include "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief."

The court is unconvinced by defendant-intervenors' third argument, i.e., that what defendant-intervenors now consider to be additional deficiencies in Supermel's questionnaire responses during the investigation, AHPA Comments 5–11, 16–18, compelled Commerce to reinstate a decision to apply total AFA.

Defendant-intervenors' arguments fail to persuade the court that Commerce, despite the considerable discretion inherent in any exercise of authority under 19 U.S.C. § 1677e, was *obligated* to base the Remand Redetermination on facts otherwise available with an adverse inference. Notably, Commerce did not submit the Remand

Redetermination under protest and, accordingly, reached on its own, independently of any directive of the court, its finding that it had sufficient record information to support a 10.52% estimated weighted average dumping margin. Defendant-intervenors argue, to the contrary, that the court, in directing Commerce to determine a new dumping margin, "reweighed factual findings," "substituted its judgment for that of Commerce" and in effect denied "Commerce discretion to reconsider or further explain its rationale for application of AFA." AHPA Comments 26. These arguments are specious and misread the court's opinion and order in *Apiário I*, which disallowed certain findings as unsupported by the record evidence but did not preclude new findings related to the use of facts otherwise available or adverse inferences, if supported by the existing record. Commerce examined that record and permissibly exercised its discretion, reversing its previous determination under 19 U.S.C. § 1677e. As discussed below, defendant-intervenors have failed to meet their burden of showing that Commerce lacked a basis in substantial record evidence for this course of action.

Defendant-intervenors direct, essentially, five objections based on what they now characterize as Supermel's failure to submit adequate responses to the Department's questionnaires. First, they argue that Supermel "failed to provide accurate sales reconciliations" "of its reported sales with its financial statements" and that Supermel did not provide sufficient supporting documentation. AHPA Comments 5–6. Second, they contend that Supermel submitted misreported payment dates, gross unit prices,

packing expenses and materials with their honey sales. *Id.* at 7–10. Third, they argue that Supermel misclassified sales of honey by failing "to corroborate its purported sales of organic honey, relevant certification expenses, and certain critical product characteristics." *Id.* at 10. Finally, they claim Supermel failed to verify its sales and cost information. *Id.* at 16–18.

The Remand Redetermination responded to all of these objections by explaining that "Supermel's data is otherwise reliable and verifiable on the basis of other information available on the record. Because these data are reliable and verifiable on the basis of other information available on the record, AFA is not warranted in this case." *Remand Redetermination* 9.

Defendant-intervenors, while identifying what they claim are deficient responses, AHPA Comments 5–11, 16–18, fail to perfect their claim by demonstrating that Commerce exceeded its discretion under 19 U.S.C. § 1677e, and they make no attempt to show, in particular, how their claimed deficiencies affected the Department's margin calculation. Their five objections amount to little more than a general, unsupported contention that Commerce should have conducted additional verification and, had it done so, would have been compelled to conclude that there were inadequate "reconciliations," "supporting documentation," and corroborations. Upon reviewing the analysis it conducted and concluded in the Preliminary Determination, Commerce rejected this unsupported contention. In advocating for a new, total use of an adverse

inference and urging the court to order another remand to Commerce for that purpose (the result of which would be moot), defendant-intervenors essentially argue that Commerce must conduct a new investigation. In light of the entire, lengthy record of this proceeding and the Department's reasonable exercise of its discretion in preparing the Remand Redetermination, the court declines to do so.

The court also rejects defendant-intervenors' fourth claim that Supermel failed to support its offset for a tax credit. Under "Brazilian law, a manufacturer can claim a tax credit equal to the amount of the PIS [Program of Social Integration] and COFINS [Contribution for the Financing of Social Security] [taxes] paid on the raw materials," based on a percentage of the invoice value. *Antidumping Duty Investigation of Raw Honey From Brazil: Supermel's Sections A–C Supplemental Questionnaire Response* 16 (Oct. 6, 2021), P.R. 224–26, ECF No. 52. Commerce "evaluated the information provided" by Supermel regarding the "PIS/COFINS" tax credit and found that Supermel "answered in full" what it characterizes as "several follow-up questions." *Remand Redetermination* 10. Commerce rejected defendant-intervenors' argument that Supermel's claimed offset value should be denied because Supermel did not tie it to its accounting records because, for example, "the sample supplier invoices do not separately identify amounts for PIS/COFINS taxes." *Id.* at 10–11. In rejecting that argument, Commerce explained "the amount of PIS and COFINS taxes paid may not be separately identified on the invoices received in connection with domestic input purchases" and "the taxes are

embedded in the actual amount paid." *Id.* at 11 (footnote and internal quotation marks omitted). "Regarding the petitioners' assertion that the offset value in the cost reconciliation was not associated with any corresponding trial balance account number," Commerce found that "Supermel in its normal books and records does not have a separate account for PIS/COFINs offset or tax credits" and stated that that it "did not request either in the initial or supplemental questionnaires that Supermel specifically reconcile the offset value to its accounting records." *Id.* at 10–11.

Defendant-intervenors do not contest the Department's finding, *see id.* at 11, that PIS and COFINS taxes may not appear as a separate line item on an invoice. Nor do they contest the Department's finding that under the Brazilian tax system, PIS and COFINS taxes "are embedded in the actual amount paid." *Id.* Instead, defendant-intervenors argue ineffectually that "[i]t is the respondent's burden to populate the record with relevant information and to demonstrate that a claimed offset is warranted." AHPA Comments 32. Commerce reviewed the record in response to defendant-intervenors' allegation and concluded, based on substantial record evidence, that Supermel qualified for the offset.

The court also rejects defendant-intervenors' final argument, i.e. that Commerce, in its Remand Redetermination, "failed to adequately explain its reasoning and failed to address arguments raised by defendant-intervenors" in their brief submitted to the

court in *Apiário I* and in their comments on the draft remand redetermination.  AHPA Comments 28.

Defendant-intervenors' contention that Commerce should have addressed the arguments raised in their Rule 56.2 brief before the court in *Apiário I* is nonsensical, as the Rule 56.2 briefs were submitted for consideration by the court.  As to their claim that Commerce failed to address their draft comments, 19 U.S.C. § 1677f(i)(3) requires Commerce to provide an explanation of the basis for its findings and to address the relevant arguments made by interested parties.  Explaining the basis of its findings does not require Commerce to address every argument presented by interested parties.  "Existing law . . . instead requires that issues material to the agency's determination be discussed so that the path of the agency may reasonably be discerned by a reviewing court."  Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103–316, at 892 (1994) (internal quotations and citations omitted).  Commerce addressed some of defendant-intervenors' lengthy arguments only generally rather than address every argument with particularity.  That is not a basis upon which the court may reject the Remand Redetermination.

### III. Conclusion

The Department's decision in the Remand Redetermination to assign an estimated dumping margin of 10.52% to Supermel is supported by substantial evidence

**Court No. 22-00185**                                                                                                     Page 17

and adequately explained.  Commerce reasonably exercised its discretion in remedying the deficiencies the court identified in *Apiário I*.

    The court will enter judgment sustaining the Remand Redetermination.

                                            /s/ Timothy C. Stanceu
                                            Timothy C. Stanceu
                                            Judge

Dated: January 24, 2025
       New York, New York